# CASES

## ARGUED AND DETERMINED

### IN

# THE SUPREME COURT

### · OF

## THE STATE OF MISSOURI,

### MARCH TERM, 1864, AT ST. LOUIS.

———o·o·o———

STATE, *ex rel.* ALBERT JACKSON, Petitioner, *v.* WILLIAM S. MOSELEY, AUDITOR OF PUBLIC ACCOUNTS, Respondent.

*Mandamus—Right to Office.*—The right to an office cannot be determined upon an application for a *mandamus* to the Auditor of Public Accounts, directing him to issue to the relator a warrant for the salary, while another person holds the commission.

### *Petition for Mandamus.*

The 15th Judicial District for the State of Missouri was created by an act of the General Assembly, approved March 3, 1855, and entitled "An act to establish the 15th Judicial Circuit, and for other purposes." (Sess. Acts, p. 24.)

On the 3d Monday of March, 1855, the petitioner was duly elected judge for said circuit, and commissioned as such. On the first Monday of August, 1857, the petitioner was again elected judge of said circuit, and commissioned. On the first day of April, 1864, the petitioner presented his account to the Auditor for allowance, being in amount $375, "for salary as judge of the 15th Judicial Circuit, for the quarter ending March the 31st inclusive."

On this account, as presented, the Auditor has endorsed the following as his official explanation for not allowing the account for payment:

"The Auditor cannot audit and allow the above account to Judge Jackson, for the reason that Judge J. W. Emerson was elected judge of the 15th Judicial Circuit on the 3d of November, 1863, and duly commissioned on the 5th day of January, 1864, and is under said election now judge of said court. April 1, 1864. Wm. S. Moseley, Auditor."

On the above facts, as stated, all of which are admitted, the application for *mandamus* was made to the Supreme Court to compel the Auditor to reverse his action in the premises.

*N. Holmes,* for petitioner.

I. The constitutional and statute laws applicable to the case seem to be the following:

Sec. 3 of the " Act to establish the 15th Judicial Circuit," approved March 3, 1855, as follows: "§ 3. There shall be an election held at the several places of voting within the aforesaid several counties, on the third Monday of March, A. D. 1855, for the purpose of electing a judge for said 15th circuit, which election shall be governed in all respects by the law regulating the election of circuit judges, who shall hold his office until the regular election for circuit judges." (Local Acts 1855, p. 24.)

At that date the constitutional provisions stood thus:

" Art. VII. Amendment ratified in 1850–1. § 1. * * * And hereafter each judge of the Circuit Courts shall be elected by the qualified electors of their respective circuits, and shall be elected for the term of six years, but may continue in office until his successor shall be elected and qualified. * * * And the General Assembly shall provide by law for the election of said judges in their respective circuits. * * * The first general election for circuit judges shall be held on the first Monday in August, A. D. 1851, and on the first Monday in August every six years thereafter. * * *

The offices of the several circuit judges shall be vacated on the first Monday in August, A. D. 1851."

And by the revised act concerning courts (R. C. 1855, p. 532) : " § 4. On the first Monday in August, in the year 1857, and every six years thereafter, there shall be an election held in each judicial circuit in this State, at the places and in the manner provided by law for holding elections, for the election of a circuit judge for each circuit, respectively, by the qualified voters therein."

So the law appears to have stood down to the passage of the ordinance of the State Convention concerning the election of judges, which provided, in effect, " § 1. So much of the sixth and seventh articles of the Amendments to the Constitution, ratified in 1850-1, as provides for the election of Supreme and Circuit judges on the first Monday in August, 1851, and every six years thereafter, shall be and is abolished ;" and " § 2. That the first general election for Supreme and Circuit judges shall be held on Tuesday next after the first Monday in November, 1863, and every six years thereafter." (Ord. June 26, 1863, Acts 1863-4, p. 702.)

This ordinance did not vacate the offices of the judges, but only changed the day of election.

II. I make these points :

1. By Art. —, § 7, of the Constitution, the Legislature has power to establish new and additional circuits, and the second cited clause from Art. VII. of Amendments of 1850-1, gives power to provide for the election of circuit judges therein.

2. By the first cited clause of sec. 1 of Art. VII. of Amendments to Constitution of 1850-1, the term and tenure of the judicial office is absolutely fixed at six years ; and there is no other clause in the Constitution which ascertains or defines it otherwise, nor indeed in any statute. I pass over the clause of the same section which provides that " if any vacancy shall happen in the office of any circuit judge, by death, resignation, removal out of his circuit, or by any

other disqualification," the Governor shall issue a writ of election to fill such vacancy, or, if it happen within six months before the general election, shall appoint a judge "for the residue of the term only," not deeming that this can be considered, by any construction, such case of a vacancy.

3. The other clauses cited from Art. VII. of the Amendments of 1850–1, and sec. 4 of the Act concerning Courts (R. C. 1855, p. 532), merely ascertain and fix the day and year on which the general election for judges shall be held, but provide nothing concerning the term or tenure of the office, nor as to the time when the term shall begin or end; though it is true that as to all those circuits which were in existence at the date of the amendments, the offices of the judges therein were vacated on the same day of the election, and consequently the beginning and expiration of the terms of the judges there elected in fact correspond to the days of the general election as well as those of their successors in office.

4. The act of March 3, 1855, sec. 3, so far as it made provision for the election of a judge in the fifteenth circuit was constitutional and valid; but so far as the last clause thereof, in these words, "who shall hold his office until the regular election for circuit judges," can be interpreted to refer to the next general election "for circuit judges, to be held on the first day of August, 1857," for the purpose of limiting the term or tenure of office of the judge so elected to that date, it is inconsistent with the Constitution, inoperative and void. (Bailey v. Gentry, 1 Mo. 164; Smith, Com. in Stat. & Const. Law, 601.) Where there is contradiction, partial or other, in two enactments on laws, resort must be had to construction, and construction consists in causing a text of inferior authority to agree and harmonize with the demand of a principle of superior authority, though against the immediate and direct meaning of the words constituting the inferior text. (Id. 602.) " If a law be passed, parts of which are

contrary to the fundamental law of the State, it is called construing the law, when the proper judges declare those parts invalid."

5. The day of the first election only in the fifteenth circuit is specially provided for in the act, leaving subsequent elections to be governed by other laws : but this last clause of sec. 3 may properly be interpreted as having the effect to provide that such subsequent elections shall take place on the same days as the " general election " for circuit judges, (as indeed would have been the case without that clause,) though the consequence be that the second election would be held some years before the expiration of the preceding term. Members of Congress in this State have been elected more than a year before their actual qualification as members, and seven months before the legal commencement of their term.

6. If these positions be sound, as I submit they are, then it follows that Judge Jackson's first term ended in 1861, and that his second and present term will end in 1867 ; and although the election of Mr. Emerson in November, 1863, may be valid, his term cannot begin until the year 1867.

7. It may be contended that this first election in the fifteenth circuit was an election to fill a vacancy, and for the residue of a term only, there being, as it may be said, a circuit in existence, with as yet no judge in it. But this view, it is submitted, cannot prevail, for this election did not take place by virtue of a writ of election issued by the Governor to fill a vacancy, under the clause of sec. 1 of Art. VII. of Amendm. to Const., which provides for the case of a vacancy ; nor did such vacancy, if vacancy in any it can be called, exist " by death, resignation, removal out of his circuit, or by any other qualification " of the judge thereof ; to which cases of vacancy, only, the power of the Governor to issue a writ of election " for the residue of the term only " is limited and confined. On the contrary, this election took place by virtue of the special act of March 3, 1855, passed by the Legislature under and by virtue of the power given them by the sections of the articles of the Constitution above cited

authorizing the creation of new circuits, and directing that provision should be made by law for the election of judges therein ; but no power is given by these same sections, nor any other, to provide for a term or tenure of office different from that fixed by the seventh article of the Constitution aforesaid.

8. The election of J. W. Emerson on the third day of November, 1863, was without authority of law and a void election, for the reason that the Legislature had made no provision by law, in pursuance of the Constitution, or of the ordinance of 1863, for the election of judges to take place on the said third day of November, 1863.

The ordinance itself did not make any provision for an election, nor did it say the election was to be held according to the provisions already made and then existing by law for the holding of elections in the respective circuits.

The ordinance did not abrogate that clause of sec. 1 of Art. VII. of Amendments to Const. of 1860–1, which ordains that " the General Assembly shall provide by law for the election of said judges in their respective circuits," and which still continued in force ; but there was no meeting of the Legislature after the passage of the ordinance, and before the said third day of November, 1863 ; and no provision was made by law for an election to be held on that day, in pursuance of the above cited clause of the Constitution.

The ordinance, as supreme and paramount law, absolutely abolished and abrogated both these clauses of the articles six and seven of the Constitution, which fixed the day of the election to be held on the first day of August, 1851, and every six years thereafter, and the statutes providing for an election to be held on those days ; and as no new provision was made by law for holding an election on the third day of November, 1863, there was none in force on that day, and the elections held were without authority of law, irregular, and void.

For instance, sec. 4 of the Act concerning Courts (R. C. 1855, p. 532), made provision for an election to be held on

State, *ex rel.* Jackson, v. Auditor.

the first Monday in August, 1857, and on the same day every six years thereafter. By the ordinance of 1863, that provision of law was abrogated by the paramount operation of the ordinance, leaving no other provision whatever in force, and itself making no other provision for an election to be held on the third day of November, 1863. It merely ordained that the day of the general election for judges should be thereafterwards the Tuesday after the first Monday in November, 1863, and on the same day every six years thereafter. But it was left to the Legislature to provide by statute law for the necessary machinery and details of law for holding the election and carrying the ordinance into effect, and this was never done.

In the case of State v. Ewing, 17 Mo. 515, the tenure of office and mode of appointment of the Secretary of State were changed, by an amendment to the Constitution itself, without abolishing the office, and the amendment itself provided that the election should be held in such manner as should be provided by law, and actual provision by statute law was made for the election accordingly, and the newly elected Secretary was held to be entitled to the office. The case is authority to the point, that when the Constitution or fundamental law of the State creates an office to be filled by election on a certain day fixed, and contemplates that provision shall be made by law for holding the election, such provision must be made; otherwise no valid election can be had. And where, as in this ordinance, nothing is said about making provision for the election, that subject is left to the Constitution as it stood before the ordinance.

*Glover & Shepley*, for respondent.

The right of the relator to the office of judge of the 15th Judicial Circuit, and to pay therefor, is supposed to rest upon the following propositions:

1. That his election as judge, under the act of March 3, 1855, was for a full term of six years thereafter.

2. That the election in August, 1857, was another full term of six years, commencing in August, 1861, four years after the election, and ending, of course, in 1867 ; the necessary consequence being that when Mr. Emerson was elected judge in November, 1863, his term of office did not begin to run till in 1867. If any one really believes either of these propositions, it appears to us to be a singular instance of mental delusion. The Constitution declares (1 R. C: 1855, p. 95) : " The first general election for circuit judges shall be on the first Monday in August, 1851, and on the first Monday in August every six years thereafter." The purpose was to elect all judges anew at these general elections, and this is made more palpable by the following : " The offices of the several circuit judges shall be vacated on the first Monday in August, 1851." No matter what any statute may say, the Constitution governs, and all the judges vacate their offices at the end of six years ; and the only qualification on this is, that a judge whose seat on the bench is so vacated " may continue in office until his successor shall be elected and qualified." Mr. Jackson's election then in 1855, was for the term ending in August, 1857, and his election in August, 1857, was for a term of six years, commencing from that election. This is the simple operation of the constitutional provisions. The statute of 1855, Session Acts p. 24, is not in conflict with, but expressly conforms to, the Constitution. The third section of it declares the judge " shall hold his office until the regular election for circuit judges." That is, that by virtue of the law Mr. Jackson was to serve, on his election under it, until August, 1857. Nothing can be plainer. In 1857, when he was elected again, it was for six years more, and his term ended in August, 1863. By the ordinance of the Convention the election was postponed from August to November, 1863 ; and if there is any lawful government in Missouri, that election in November, 1863, was a lawful election. Mr. Emerson was then elected for six years, and his title to the office is perfect.

BATES, Judge, delivered the opinion of the court.

Albert Jackson was formerly the judge of the 15th Judicial Circuit. . Another person has been commissioned as judge of that circuit, who was elected at the general election of judges in November, 1863. Judge Jackson claims that he is still lawfully the judge; and having presented to the Auditor of Public Accounts an account against the State for one quarter's salary, and the Auditor having refused to audit and allow the same, he applies to this court for *mandamus* to the Auditor, commanding him to audit and allow the account.

The application for a *mandamus* is refused. It is sufficient for the Auditor that another person has been commissioned as judge of the same circuit. The Auditor has no power to inquire whether the commission was properly issued to such other person. That is a matter wholly without the scope of his duties. The law has provided another means for determining the right to an office.

Judges Bay and Dryden concur.