PEOPLE EX REL. ROBERTSON, appellants *v.* VAN GASKIN ET AL., respondents.

CONSTITUTIONAL LAW — *Presumptions favor constitutionality.*— An act of the legislature will not be adjudged to be in violation of the constitution, except where plainly repugnant thereto. The act will be presumed to be constitutional until the contrary is clearly and satisfactorily shown.

SAME — *Legislative power over public officers.*— In the absence of constitutional restrictions, a legislature, having power to create a particular office, and to regulate the manner in which it should be filled, and the

term and duties of the incumbent, has the power to lengthen or abridge such term, or to declare the office vacant, and appoint another to fill the vacancy. The exercise of such power by the legislature would not be in violation of sec. 10, art. I, of the United States constitution, prohibiting a state from passing any law impairing the obligations of contracts, or of the fifth amendment thereof, providing that no one shall be deprived of property without due process of law.

SAME — *Act vacating offices of county commissioners of Custer county, valid.* — The act of the territorial legislature, thirteenth regular session, page 140, declaring vacant the offices of county commissioners of Custer county, and appointing the defendants to fill the vacancies thus created, is valid.

## *Appeal from First District, Custer County.*

CHUMASERO & CHADWICK, for appellants.

This cause was decided in the court below in favor of defendants on their demurrer to plaintiff's complaint. The action was brought under chapter V of title 9 of the Revised Statutes of Montana territory, to determine the right of plaintiff, relator, and others to the office of county commissioners of Custer county, and to oust the defendants, who had intruded themselves into the office. Sections 398 and 399 of our statutes provide how the action may be brought, by whom and for what purpose. Every requisite of the statute was fully complied with. The facts are set out in the complaint and admitted by the demurrer.

On the face of the pleading alone there is not, we contend, any defect which will justify the ruling of the court below. But on the hearing of the demurrer, the court permitted the merits of the case to be argued, and decided it, presumably, on matters not appearing in, or alluded to in, the pleadings, and which involved the validity of an act of the legislature of the territory of Montana, approved March 8, 1883, p. 140, by which the offices of the then board of county commissioners of Custer county were declared vacant; and the defendants in this action were legislated into the offices at that time legally filled by the relator Robertson and by Hubbell and

Briggs; which act of the legislature, the relator contended, was illegal, unconstitutional and void; and that judgment should have been in his favor. To sustain which position we make the following points and cite the following authorities:

1. The relators, Hubbell and Briggs, were legally elected and appointed to the office and duly qualified to act, and were filling the offices of county commissioners, having fully complied with the territorial laws on that subject, and were entitled to hold the same and to receive the emoluments of the office for the period of six years, which had not expired on the 8th day of March, 1883.

The powers of government are distributed among three departments by the constitution of the United States and our organic act. They are separate, and neither one can rightfully encroach upon the others. The legislature is not supreme; it has no authority to exercise a power essentially judicial or executive. *Wynhammers* v. *Pope*, 13 N. Y. 391, 395, 432; *Ervin's Appeal*, 16 Pa. St. 256, 263, 266, 267, 268; *Greenhough* v. *Greenhough*, 11 Pa. St. 494, 495; *De Chastellux* v. *Fairchild*, 15 Pa. St. 18, 20; *Newland* v. *Marsh*, 19 Ill. 382–84; *Taylor* v. *Porter*, 4 Hill, 144–46; *Parmlee* v. *Thompson*, 7 Hill, 80, and note; Sedgw. Const. & Stat. Law, secs. 154, 156, 158, 159, 160–164; also, secs. 166–169, and 170–178.

The relator and other persons named in the complaint were legally elected or appointed, and have the right to hold the office and receive the emoluments, unless legally removed. 2 Black. Com. 36; Act of February 19, 1881, p. 38; Organic Act, sec. 7.

An office is property. The occupant has the same right to it as to any other property. This right cannot be abrogated. or impaired unless by consent. *King* v. *Hunter*, 65 N. C. 603, 610.

One holding an existing office under a fixed tenure cannot be removed, nor can his regular term of service be abridged by an act of the legislature, other than by an

act abolishing the office.    *State* v. *Wiltz*, 11 La. Ann. 439; *Brown* v. *Groon*, 6 Bush (Ky.), 1.

The legislature, while it continues an office, cannot oust an incumbent during the term for which he is chosen. *Catten* v. *Ellis*, 7 Jones (N. C.), 645; R. S. secs. 343, 344, p. 480.

The last cited act is a general act affecting and operative over the whole territory and affecting alike all county commissioners; any legislative act affecting it, to be valid, must be equally general.

The legislature have not the power to suspend the operation of a general law in favor of an individual. *Holden* v. *James*, 11 Mass. 396, and cases before cited.

The legislature have no power to remove a particular individual singled out from others of the same class. *Commonwealth* v. *Gamble*, 1 Am. 422, p. 30; *Low* v. *Commonwealth*, 4 Metc. (Ky.), and cases cited from North Carolina, Louisiana and Kentucky.

An officer is entitled to a trial before he can be removed. R. S. p. 296, secs. 60, 61; *People* v. *Secry*, 55 How. Pr. 455.

Where the constitution provides for an appointment in a particular manner, the legislature has no power to create a new office for the same duties and to direct the appointment in a different manner. *Warner* v. *People*, 2 Denio, 274 *et seq.*

The laws of the territory declare when vacancies shall occur (R. S. p. 523, sec. 554), and how that of county commissioners shall be filled. R. S. p. 601, sec. 937.

A vacancy must be established in a proceeding regularly tending to that end. *Stokes* v. *Kirkpatrick*, 1 Metc. (Ky.) 138; *Tappan* v. *Gray*, 9 Paige Ch. 507.

As to power of judiciary to declare a law void, see Sedgw. Const. Law, 212 *et seq.;* Cooley, St. Lim. 172, 173, 174, 175.

The court below, at the time the judgment was rendered, was illegally in session. The judgment was

rendered on the 17th day of April, 1883, which was after the time limited by law for holding the court in Custer county had expired. Custer and Choteau counties were at that time both in the same (third) judicial district of Montana territory, the Custer county term commencing April 10, 1883, and Choteau county April 17, 1883. The term in Custer county expired by limitation on the 16th day of April, and the Choteau county term commenced on the 17th day of April, 1883, on which day the judgment was rendered. Every judicial act done on the 17th day of April in Custer county, as by the third judicial district court, was *coram non judice* and void.

This court is bound to take judicial notice and cognizance of the boundaries of the territorial judicial districts and of the divisions into towns and counties, and the limits of such divisions and judicial districts, which districts and the times of holding courts are designated and fixed by the judges of this court, and are a part of its records. Organic Act, R. S. U. S. sec. 1914; *Brown* v. *Piper*, 91 U. S. 37; *Lyell* v. *Lapeer Co.* 6 McLean, 446; *U. S.* v. *Johnson*, 2 Sawy. 482; *Buchanan* v. *Whitman*, 36 Ind. 257; *Goodwin* v. *Appleton*, 32 Me. 453; *Ham* v. *Ham*, 39 Me. 363; *Kyser* v. *Coe*, 37 Conn. 597; *Winnipisseogee Co.* v. *Young*, 40 N. H. 420; *State* v. *Power*, 25 Conn. 48; *Commissioners* v. *Spitzler*, 13 Ind. 255; *Ind. & Cin. R. R. Co.* v. *Case*, 15 Ind. 42; *Buckingham* v. *Gregg*, 19 Ind. 401; *Hinckley* v. *Beckwith*, 23 Wis. 328; *Wright* v. *Hawkins*, 28 Tex. 452; *Brown* v. *Elms*, 10 Humph. 135; *King* v. *Kent*, 29 Ala. 542; *People* v. *Robinson*, 17 Cal. 363.

Prior to the 24th day of March, 1883, the county of Custer was, by appointment of the judges of this court, placed in the first judicial district, with a regular term of court fixed for the fifth Monday of April, and Choteau county was in the third judicial district, with a term fixed for the third Tuesday of April, which, in 1883, fell upon the 17th day of the month, as the records of this

court will show. The records of this court will further show that, on the 24th day of March, 1883, two of the judges of this court met at the capital, under authority of the organic act, and changed Custer county from the first judicial district and placed it in the third judicial district, and altered the time of holding court to the second Tuesday of April, which, in 1883, fell upon the 10th day. On the 17th day of April the regular term of court in Choteau county commenced, and was duly held by another judge of this court, the judge of the third judicial district continuing to hold court in Custer county at the same time that court was being held in Choteau county, thus having two courts, at widely different points, transacting business at the same time in the same district. This, we contend, was illegal. Upon this question we cite the following authorities: If a district is composed of different counties, a trial in one of the counties on the commencement day of a term in another county is *coram non judice. Bates* v. *Gage,* 40 Cal. 183; *Gregg* v. *Cooke,* Pick. 82; *People* v. *O'Neil,* 47 Cal. 109.

A judgment rendered by a district court after the time appointed by law for its adjournment is invalid. *Smith* v. *Chichester,* 1 Cal. 409; *Dominguez* v. *Dominguez,* 4 Cal. 186.

It is essential to the validity of a judgment that it be rendered at the time and place and in the form prescribed by law. *Wickes* v. *Ludwig,* 9 Cal. 173.

No trial can be had or judgment rendered except in term time. *Wickes* v. *Ludwig,* 9 Cal. 173; *Norwood* v. *Kenwood,* 34 Cal. 329; *Denwood* v. *People,* 1 Hill, 343.

SANDERS & CULLEN and STREVILLE & GARLOCK, for respondents.

This case confessedly turns upon the validity of the statute of Montana, Laws 1883, page 140, and the first proposition is, for what cause may a statute be declared invalid?

The court takes judicial notice of the law and its application, and therefore it need not be pleaded; and if a pleading is against express definite law, it does not show a cause of action.

In early times, laws were held invalid because *contra bonos mores,* and also because contrary to public policy, but both these causes have been eliminated from the reasons for declaring a law of no effect.

There has been some declamation against the omnipotence of the legislature, and some judicial interpretation, but the courts have not recently arrogated to themselves the authority to declare what is "public policy," or, as against the people, to define "good morals."

No question can arise here as to officers *de facto,* nor as to proceedings in *quo warranto* to oust persons from office whose titles were infirm.

The statute here boldly says, in words, March 8, 1883: "The offices of county commissioners of the county of Custer be, and said offices are hereby, declared to be vacant, and no official duty shall be performed by the persons constituting the present board of county commissioners, except to make report; . . . and that William Van Gaskin, George M. Miles and Thomas J. Bryan are hereby appointed commissioners of Custer county."

Where between the law and the officer there is the intervention of some third person, or power, to determine a person's title to office, the law has invented the fiction of officers *de facto* for the public welfare, and not at all for the benefit of the intruder; but where the law acts directly on the officer, there is no room for the matter of officers *de facto* to stand as against officers *de jure.*

In the matter of *The People* v. *Sharpless,* 21 Pa. St. p. 147, Judge Black has effectually and wholly disposed of the pretense that acts of the legislature can be overturned, except by their contravention of some higher human enactment, and in behalf of the judiciary has

abdicated the usurpation which had been arrogated to themselves by some courts, of being, in the character and quality of their structure, the peculiar repositories of "public policy" and "good morals."

The people declare their policy by the department which is amenable to them frequently and directly, not hampered by authority and precedent, and no basis can be laid justifying courts in denying to legislatures fair judgment of good morals.

If this court could declare any law void as against "public policy" or "good morals," it could not declare this law so void, except upon a hearing in court or before a referee, which should put the court in the possession of all the facts, circumstances and surroundings of the old board of county commissioners, March 8, 1883, and the quality and character of the new board; and to do this would require from plaintiffs allegations attacking the law directly, so that the respondents could be advised of the cause of action, and have an opportunity to make a defense.

It has been decided in the supreme court of the United States that in every competent government there must exist the power to change the agents designated for the execution of its laws. See *Butler* v. *Pennsylvania*, 10 How. 402; *Bryan* v. *Cattell*, 15 Ia. 538; *Taft* v. *Adams*, 13 Gray, 136; *State* v. *Douglass*, 26 Wis. 428; *State* v. *Davis*, 44 Mo. 129; *People* v. *Haskell*, 5 Cal. 357; *Attorney-General* v. *Squires*, 14 Cal. 12; *People* v. *Banvard*, 27 Cal. 470.

Before this law can be held for naught, there must intervene some provision of the constitution of the United States, or some act of congress, which it invades. It cannot lose its efficiency by declamation or vituperation from those affected thereby. *Hoke* v. *Henderson*, 25 Am. Dec. 701, n.

The only vested rights, political in their character, which are vested in the citizen are those enumerated in

the constitution of the United States, or in some act of congress, and it is not pretended that the right to hold office for the full term for which one was elected is so therein enumerated.

The right to hold office is not a contract falling within the protection of sec. 10, art. II, of the constitution, or art. 5 of the amendments thereto.

Sec. 1857 of the Revised Statutes of the United States provides that all . . . county officers . . . shall be appointed or elected in such manner as may be provided by the governor and legislative assembly of each territory. Besides this there is not to be found either in the constitution of the United States, or the organic act, any reference to county offices, the manner in which they shall be constituted or the terms for which they shall be filled. These offices are entirely the object of legislative creation, and the legislative assembly may at any time abolish the office; it may increase or diminish the duties and compensation of the person who shall for the time being hold the same, or it may, as was done in the case of the appellants, in this case, during the incumbency of the office, cut short and abridge the terms for which they were respectively elected or appointed. *People* v. *Whitlock*, 92 N. Y. 191; *Long* v. *Mayor, etc.* 81 N. Y. 425; *Barker* v. *Pittsburgh*, 4 Pa. St. 49; *Durow* v. *Hobart*, 10 Nev. 28, and the cases before cited.

These offices having been created by legislative authority, there can be no contract, either express or implied, for the continuance of the compensation of the officer or the duration of the term for which he may have been elected or appointed. *Koontz* v. *Franklin Co.* 76 Pa. St. 154; *Conner* v. *Mayor, etc.* 5 N. Y. 285, 295.

The doctrines announced in these cases referred to, as to the control of the legislature over offices which are not expressly protected by constitutional provisions, seems to have been followed in most of the states, as well as by the courts of the United States. The only no-

table instance of the application of a different rule is by the courts of North Carolina.   *Hoke* v. *Henderson*, 25 Am. Dec. 677, and note on page 701.

The complaint in this case alleges that Russell Briggs, for whom it is claimed by the relator that he is entitled to the office of county commissioner of Custer county, was appointed to such office on the 1st day of May, 1882, to fill a vacancy then existing, and that James B. Hubbell was appointed county commissioner of said county on the 1st day of September, 1882.   Appointments so made to fill vacancies then existing could only have continued until the next general election thereafter, which the law required to be held, and which as appears from the allegations of the complaint was in fact held, on the 7th day of November, thereafter.   R. S. Mont. p. 516, sec. 517; p. 601, secs. 936, 937.

This being the case, the said Briggs and Hubbell could not in any event be entitled to the offices referred to, as is claimed for them in this action.

To the objection made for the first time in appellants' brief, that at the time the judgment appealed from was rendered a term of the district court had commenced and was being held in Choteau county in the same judicial district, it may be said that there is nothing in our statutes or the organic act which in any way limits the time during which a term of the district court may be held, or when it shall come to an end.   That a term appointed to be held and once commenced does not terminate on the day appointed for the commencement of another term in the same district has been before decided by the court.   *Higley* v. *Gilmer*, 3 Mont. 90, 95; *Mayne* v. *Creighton*, id. 108; *Roudebush* v. *Ray*, id. 188.

Galbraith, J.   This is an appeal from a judgment for the defendants rendered in pursuance of an order sustaining a demurrer to the complaint.

The complaint was in substance as follows, viz.: " The

district attorney of the first judicial district, in which is situate the county of Custer, has been applied to, to bring this action, and that he has refused so to do upon the complaint of the appellant, who therefore brings this action upon his own relation. That the respondents have intruded into the office of county commissioners of said county, and now unlawfully hold and exercise the said offices. That on the 7th day of November, 1882, the appellant was duly elected to the office of county commissioner of said county, and that he did, within the time prescribed by law, qualify himself to hold said office, and entered upon the performance of its duties; and is still entitled to the said office and the emoluments thereof. That on or about the 1st day of May, 1882, Russell Briggs was duly appointed by the probate judge of said county as one of the commissioners thereof, to fill a vacancy, and duly qualified and entered upon the duties of the office. That on or about the 1st day of September, 1882, James B. Hubbell was duly appointed one of the commissioners of said county to fill a vacancy, who also duly qualified and entered upon the duties of the office. That on or about the 15th day of March, 1883, at the time of the alleged unlawful intrusion, while the three last named persons were in possession of and entitled to these offices, the respondents usurped and intruded into and now unlawfully hold them and withhold the same from the relator, and said Briggs and Hubbell. Wherefore the appellant asked that the respondents be ousted from said offices, and the relator, and Briggs and Hubbell, be restored thereto."

The demurrer was upon the ground that the complaint did not state facts sufficient to constitute a cause of action.

The question presented by this demurrer relates to the validity of an act of the legislative assembly of Montana territory — laws of the thirteenth regular session, page 140 — by which the offices of county commissioners of

Custer county were declared vacant; this relator and
Briggs and Hubbell being the then incumbents of said
offices, and the respondents appointed to fill the vacan-
cies.   The language of the statute, so far as it is neces-
sary to state it, is as follows: "That the offices of county
commissioners of the county of Custer be, and the said
offices are hereby, declared to be vacant, and no official
duty shall be performed by the persons constituting the
present board of county commissioners, except to make
report;  . . .   and that William Van Gaskin, George
M. Miles and Thomas J. Bryan are hereby appointed
commissioners of Custer county.   The act then provided
for the election upon the third Monday of April follow-
ing of three commissioners of Custer county, who, after
their election and qualification, should act as said com-
missioners and enter upon their official duties, and there-
upon the powers and duties of said commissioners herein
appointed shall cease."   The act was approved March 8,
1883.

It is claimed by the appellant that the above act is in-
valid, for the alleged reason that it contravenes the con-
stitution of the United States and the laws of congress.
The declaration that the act of a co-ordinate branch of
the government has been done in disregard of constitu-
tional limitations is the exercise of a solemn function,
and one which courts will exert with delicacy and re-
luctance.   An act of the legislature should not be ad-
judged to be in violation of the constitution except where
plainly repugnant thereto.   The act will be presumed to
be constitutional until the contrary is clearly and satis-
factorily shown.   "Plenary power in the legislature is
the rule.   A prohibition to exercise a particular power is
the exception.   In inquiring, therefore, whether a given
statute is constitutional, it is for those who question its
validity to show it is forbidden."   Denio, C. J., in *People
v. Draper*, 15 N. Y. 532.   "A court cannot declare a
statute unconstitutional and void solely on the ground of

unjust and oppressive provisions, or because it is supposed to violate the natural, social or political rights of the citizen, unless it can be shown that such injustice is prohibited, or such rights guarantied or protected by the constitution." Cooley on Constitutional Limitations, 197.

In a case of this kind, it is only with the power of the legislature viewed in relation to the fundamental law, and not with the expediency or propriety of its legislation, that the court has to do. These are matters for the consideration of the legislature itself, when it enacts the law. The above act can only be declared invalid because it violates the constitution of the United States, or the acts of congress, or interferes with or prevents the exercise of some right conferred or protected thereby. The act of congress in relation to county officers is as follows: " All township, district and county officers, except justices of the peace and general officers of the militia, shall be appointed or elected in such manner as may be provided by the governor and legislative assembly of each territory." It will be observed that this act uses the term " county officers," thus recognizing the political division of the territory into counties, and the necessity for, and the existence of, such officers for their government. But the particular office of county commissioner is not named therein, and the creation thereof was left entirely to legislative enactment. The office of county commissioner in this territory does not exist by virtue of common law, but by statutory law. And we find that the legislative assembly, in providing for the goverment of counties, acted in accordance with both these views. It created the office of county commissioner. It provided that " the powers of the county, as a body corporate and politic, shall be exercised by a board of county commissioners therefor." R. S. 1879, p. 479, sec. 337. "The board of county commissioners shall consist of three qualified electors, any two of whom shall be competent to transact business." The creation, therefore, of county

commissioners; the manner of their selection, whether by election or appointment; the terms of the period during which they shall act; the character of the duties to be performed, and the compensation to be paid for the performance of such duties, are entirely the subject of legislative enactment.   There is nothing in the above act of congress which in any way limits the power of the legislative assembly in respect to the foregoing particulars.   All the above matters relating to county commissioners are, by this act, committed to the governor and legislative assembly of the territory, when acting together in a legislative capacity, to be provided for according to their discretion.

So far, therefore, as the above act of congress is concerned, this office, having been created by legislative enactment, was wholly under legislative control.   It had the power to lengthen or abridge the term of office, or to declare the office vacant and appoint another to fill the vacancy, at least in so far as to make a provisional appointment was concerned.   By the enactment of the law appointing the respondents to the offices thereby declared vacant, until the commissioners thereafter to be elected assumed the duties of their office, the governor and the legislative assembly acted within the limits of the act of congress, which required that the county officers should be appointed or elected in such manner as they might provide.   The governor and legislative assembly have the power to provide the manner of the appointment; therefore, they had the power to appoint directly.   The law was " the manner " of the appointments.   " Where an office is created by statute, it is wholly within the control of the legislature.   The term, the mode of appointment, and the compensation may be altered at pleasure, and the latter may even be taken away without abolishing the office.   Such extreme legislation is not to be deemed probable in any case.   But we are now discussing the legislative power, not its expediency or pro-

priety. Having the power, the legislature will exercise it for the public good, and it is the sole pledge of the exigency which demands its interference." Sanford, J., 2 Sanford, 355, 359.

We may say here in relation to the legislation in question that the presumption will be that it was had for the public good, and that the exigency of the case required its enactment. "The selection of officers, who are nothing more than public agents, for the effectuating of public purposes, is matter of public convenience or necessity; and so too are the periods for the appointment of such agents; but neither the one nor the other of these arrangements can constitute any obligation to continue such agents, or to reappoint them after the measures which brought them into being shall have been found useless, shall have been fulfilled, or shall have been abrogated, or even detrimental to the well-being of the public. The promised compensation for services actually performed and accepted during the continuance of the particular agency may undoubtedly be claimed both upon principles of compact and of equity; but to insist beyond this, upon the perpetuation of a public policy, either useless or detrimental, and upon a reward for acts neither desired nor performed, would appear to be reconcilable with neither common justice nor common sense." The supreme court of the United States, per Daniel, J., in *Butler* v. *Penna*, 10 How. 402.

In *Demer* v. *Hobart*, 10 Nev. 28, Hawley, J., speaking for the supreme court, says: "The legislature having, by the act of March 4, 1865, vested certain duties upon the lieutenant-governor, and allowed him a salary for his services, it was within the power of the legislature to take those duties and the salary away from him before the expiration of his term of office, and confer them upon another." *Connor* v. *The Mayor of New York*, 5 N. Y. 294; *Attorney-General* v. *Squires*, 14 Cal. 13. "The offices of lieutenant-governor and warden of the state

prison were as distinct as though filled by different persons.   The duties and obligations of the one are entirely independent of the duties and obligations of the other. So far as the office of *ex officio* warden existed in relator, it was an office created by legislative act.   The legislature might, at any time, direct how it should be filled, what compensation should be allowed, and provide the manner in which its duties should be discharged.   In such cases, the length of the term of office is regulated by considerations which affect the public interest, without any regard to the interests of the office-holder."

In *Attorney-General* v. *Squires*, 14 Cal. 13, *supra*, Baldwin, J., says: "The same power that made can destroy; unless, indeed, there be some vested right created by the act, or some right of property.   So far as this office exists in the incumbent, it is an office created by legislative act.   The constitution affixes no period of tenure to this office of tax collector, nor does it provide any mode of appointment.   The vesting of this office in the sheriff being by legislative act, though the office cannot be destroyed by the legislature, yet the legislature, not restricted in this respect by the constitution, may direct in what manner the duties shall be discharged, and how the office may be temporarily filled.   *Smith* v. *Stillman*, decided in 1852 (not reported), has been cited to show that after the legislature has created an office contemplated, as provided for by the constitution, it cannot destroy the office of the incumbent during his term. But this doctrine cannot be maintained, and is overruled in effect by the case of *The People* v. *Haskell*, 5 Cal. 357. We regard this act of the legislature, giving this office to the sheriff, as a mere legislative transfer to this officer of the duties of tax collector, and that the same power which placed them in the hands of the sheriff could divest them and place them in other hands."   In *Bryan* v. *Cattell*, 15 Iowa, 538, Wright, C. J., said:   "That it is competent for the legislature to abolish an office, in-

crease or decrease the duties devolving upon the incumbent, add to or take from his salary, when not inhibited by the constitution, we entertain no doubt. We are equally clear that it is within the legislative power to add to or change the method in which vacancies may occur, and make such change applicable to existing offices and those holding them." See, also, *People* v. *Haskell*, 5 Cal. 557; *People* v. *Whitlock*, 92 N. Y. 191; *Long* v. *Mayor*, 81 N. Y. 425; *Barker* v. *City of Pittsburg*, 4 Barr (Pa. St.), 51.

In *Donahue* v. *County of Will*, 109 Ill. 94, Walker, J., delivering the opinion of the court, says: "The question is then presented, whether the board of supervisors had legal authority and constitutional power to hear, determine and remove appellant from office. He claims it had not, because that could be done only by impeachment; or if not in that mode, then only by the circuit court on a proceeding in the nature of a *quo warranto*. It is urged that, under the constitution, the general assembly is powerless to pass a law conferring such power on the board of supervisors, and for that reason the order of the board is absolutely void. This depends upon whether any constitutional provision prohibits that body from the exercise of such power. . . . We are, therefore, of opinion that the settling of the treasurer's accounts, and finding he had not settled and acccounted for moneys of the county as required by law, and that he had been and then was in arrears with the county, and removing him from office, was not judicial. And we have no doubt the general assembly had ample power to authorize the board to act, and it is legal, valid."

It was held at the present term of this court in the case of *Carland* v. *The Commissioners of Custer County*, 5 Mont. *infra,* that the board of county commissioners of Custer county had authority, by virtue of power vested in it by acts of the legislature of this territory, to remove the treasurer of that county from office, and to declare

the office vacant.   It is true that in both of the above cases the power to remove had been delegated, but the principle announced is, that, in the absence of a constitutional prohibition, the legislature possesses authority to delegate such power of removal.   And if the legislature had the authority to delegate to the board the power of removal of the officer, it would be difficult to give any substantial reason why it could not exercise the same power directly.

In *People* v. *Hurlbut*, 24 Mich. 44, Christiancy, J., says:   "As the legislature represents the public interest, and has full control of all municipal organizations as instrumentalities of government, I see no reason to doubt their power of creating such offices as they may think the public interest requires, or of filling them with such persons as they choose to designate in the act, except as that power is restrained by some provision of the constitution.   This course of legislation may not be wise or politic, but as a question of power, I think the legislature possesses it, with the limitations above mentioned."

There is no limitation of the power of the governor and legislative assembly, conferred by the foregoing act of congress.   In the same case the same judge says: "The next objection to the validity of the act is, that the power of the legislature is confined to directing whether officers other than judicial in cities and villages shall be elected or appointed; and at what time and in what manner the election or appointment shall be made; that in thus directing, their power is exhausted, and they cannot make the appointment themselves. This argument is not based upon the ground that the provisions of this section were intended to confine the power of making the appointment to the common council of the city, or to any other local authority, for which only, it was intended, the legislature should provide; but it goes upon the assumption that, even admitting the power of the legislature to provide for an appointment

otherwise than by the local authorities of the city, still the legislature could not itself make the appointment in the manner they have undertaken by this act to make it; their power being limited to directing the time and manner in which it should be made. Though this argument may seem plausible, I do not think the conclusion is so clear or free from doubt as to authorize us to declare the act void on this ground. If the legislature had power to provide the time and manner of the appointment, and were not confined to providing for the appointment by the local authorities, then they had the power to provide that it should be made by the governor, with or without the consent of the senate; by the legislature in joint convention; or, finally, by the legislature in the very form and manner which was adopted. And if they had the power to direct that it should be made in this way, it would be very difficult to give any substantial reason why they could not proceed to make the appointment as they did without first passing an act that it should be so made. Such an act would be but a legislative determination that the appointment should be so made; and the actual making of it in this way shows the like legislative determination. A similar exercise of power by the legislature has been upheld by the supreme court of New York. *People* v. *Bennett,* 54 Barb. 480."

It is true that the above doctrine has not been acceded to in many instances to its fullest extent. Some eminent jurists assume to find in the very structure of our government, and in the principles which underlie our free institutions, and in the assumption in our constitutions generally of the existence of public or *quasi* corporations, such as counties and townships, and consequently in a recognition by them of the existence of local self-government, an implied prohibition upon the legislature to take away the right of choice, by the inhabitants of such municipalities, of their own officers, by appointments to such offices in legislative acts. But even in

these instances it is generally conceded that there may be occasions and exigencies when the legislature may exercise this power. As, for example, when an appointment may be made by the legislature, "to meet the needs of a transition state, or to bridge a chasm between a new and old establishment, or to organize and put in motion a new corporate or municipal organization." Graves, J., in *People* v. *Hurlbut, supra.*

"I have no doubt it was entirely competent for the legislature to abolish the old boards and provide for a new one to take the place of all. That would be but the ordinary exercise of legislative supervision and control in matters of municipal regulation of them. I think, also, that the legislature might make provisional appointments to put the new system in operation. The right to do this appears to me to be incident to the right to confer and recall corporate power, and rests upon the same ground as the right to provide agencies for the organization of the municipal corporation in the first place, for the apportionment of its property and debts, if its territory shall be divided and organized into two, or for the winding up of its concerns, if its charter should be taken away. There is no doubt of the right of the state to do any of these things; not by virtue of any general authority to take to itself the management of the local concerns, but because the wrong motion and modification of local government can only be provided for without confusion and injustice by the aid of the guiding and assisting hand of the authority that creates and modifies." Cooley, J., in *People* v. *Hurlbut, supra.*

The act in question provides only for the appointment of the respondents to hold such offices for about the period of six weeks, when local self-government should intervene, and commissioners should be chosen to succeed the legislative appointees. They were, therefore, merely provisional officers, and not permanent appointments to office. The power of the legislature to declare

a vacancy appears to be clear.   This power was exercised by the act; and the appointment was evidently made as necessary for the conduct of its affairs until its people made their own selection of commissioners.   The appointment was made to meet the necessities of a transition state from an "old to a new establishment;" from the declaration of the vacancy until the interposition of a local self-government.   It is claimed, however, that the acceptance of these offices by appellants constitutes a contract between them and the public which cannot be annulled without violating that provision of the constitution of the United States which prohibits any state from "passing any law impairing the obligation of contracts" (section 10, article I, constitution of the United States); nor without violating that other provision of the amendments to the constitution, article V, that no one shall be "deprived of . . . property without due process of law."   That "the office is property; that the occupant has the same right to it as to any other property.   This right cannot be abrogated or impaired unless by consent."

We cannot give our assent to this doctrine.   Counties are usually classed under the head of public or *quasi* corporations, and exist for the convenience of government.   The municipal authority of counties is a part of the machinery of state or territorial government, and exists for its assistance and benefit.   The regulation of the affairs of a county is intrusted to persons, called in this territory county commissioners, who perform the duties of their office by virtue of the authority of the legislature, which prescribes what those duties are.   The authority exercised by these commissioners is, therefore, entirely for the benefit of the public, and not for any private benefit whatever.   Under our form of government these offices exist by reason of a public necessity and as a part of the machinery of territorial government.   They should, therefore, be entirely under its con-

trol. The very nature of government would forbid that the incumbents of its offices could obtain a private right therein which would enable them to exercise such offices against the will of the state. This would be repugnant to the principle of the sovereignty of the state, which should have the power to determine always who shall be its agents to exercise its authority, restricted only by the fundamental law. We are of opinion, therefore, that the incumbent of the office of county commissioner, by the acceptance of the office, does not obtain such a right therein as is comprehended in the meaning of the above provisions of the constitution of the United States.

We are not, however, left to conjecture as to this principle, for it has been already decided for us by the supreme court of the United States in *Butler* v. *Penna, supra*. Daniel, J., in addition to what is quoted above, says: " It follows, then, upon principle, that in every perfect or competent government there must exist a general power to enact or repeal laws, and to create or change or discontinue the agents designated for the execution of those laws. Such a power is indispensable for the preservation of the body politic, and for the safety of the individuals of the community. . . . We have already shown that the appointment to and the tenure of an office created for the public use, and the regulation of the salary affixed to such an office, do not fall within the meaning of the section of the constitution relied on by the plaintiffs in error; do not come within the import of the term contracts, or, in other words, the vested private, personal rights thereby intended to be protected. They are functions appropriate to that class of powers and obligations by which governments are enabled, and are called upon, to foster and promote the general good; functions, therefore, which governments cannot be presumed to have surrendered, if, indeed, they can, under any circumstances, be justified in surrendering them." The learned judge here refers to the cases of *The*

*Charles River Bridge* v. *The Warren Bridge*, 11 Pet. 420; *The State of Maryland* v. *The Baltimore & Ohio R. R. Co.* 3 How. 534; *The People* v. *Morris*, 13 Wend. 325. The learned judge then quotes with approbation the following from the opinion in the case of *Commonwealth* v. *Bacon*, 6 Serg. & Rawle, 322: "These services, says Duncan, J., in delivering the opinion, rendered by public officers, do not, in this particular, partake of the nature of contracts, nor have they the remotest privity thereto. As to a stipulated allowance, that allowance, whether annual, per diem, or particular fees for particular services, depends on the will of the law makers." Also the following from the opinion of the court in the case of *Commonwealth* v. *Mann*, 5 Watts & Serg. 418: "That, if the salaries of judges and their title to office could be put upon the ground of contract, then a most grievous wrong has been done them by the people by the reduction of a tenure during good behavior to a tenure for a term of years. The point that it is a contract, or partakes of the nature of a contract, will not bear the test of examination."

In *Donahue* v. *County of Will*, 100 Ill. 94, Walker, J., delivering the opinion of the court, says: "It is impossible to conceive how, under our form of government, a person can own or have a title to a governmental office. Offices are created for the administration of public affairs. When a person is inducted into an office he thereby becomes empowered to exercise its powers and perform its duties, not for his, but the public, benefit. It would be a misnomer and a perversion of terms to say that an incumbent owned an office, or had any title to it."

The above decisions recognize the principle that public office is a public trust. That a public office exists not at all for the benefit of the incumbent, but only for that of the public. That it is not a grant to the incumbent, nor is it in the nature of a contract between the incumbent and the commonwealth. That public officers are the

agents of government, and that it would be inconsistent with the objects, character and purposes of government not to be able, within constitutional limits and when expedient and proper, of which expediency and propriety it is the sole judge, to create, modify or abolish them at its pleasure.

When a public office, its terms, duties and compensation, are provided for in a constitution, it would not be competent for a legislature to abolish or modify these, any more than it would to violate any other provision thereof. But, as we have seen, this is not such a case. We are therefore of opinion that the act of the legislative assembly declaring vacant the offices of the county commissioners of Custer county, and appointing other persons to fill the vacancies created thereby until the commissioners to be elected thereafter might qualify and take upon themselves the duties of their respective offices, was within its power to enact, and that the same was a valid law. The question as to the legality of the session of the court at which judgment in this case was rendered was considered in the case of *Carland* v. *The Commissioners of Custer County,* decided at this term, 5 Mont. *infra,* where it was held that the proceedings had at that term of the court were regular and valid.

Judgment affirmed.

COBURN, J., CONCURRING. While I agree to the affirmance of the judgment in this cause as the settlement of a long, angry and very serious controversy, I with much hesitation indorse the legality of the steps taken by the legislature. The removal of an officer is properly the subject of judicial action; and, although the legislature may change the duties of an office and its compensation to any extent, and may even abolish it, the amotion of the officer by it is an act of a very different quality. It is parallel to the legislative acts in aid of particular law suits, which have met with little favor with the bench

and the profession. Such acts border upon the exercise of arbitrary power, rather than upon the fair and impartial hearing of a cause in which each party may be heard before the final adjudication. The instances cited in support of this action are to be found in cases where the legislatures have taken from one officer the power and emoluments of one office, leaving him at the same time in the possession of another. And these are but few in number. The filling of the vacancy in the office by legislative act has met the condemnation of the courts. The supreme power is lodged in the people and not in the legislature, and our system of local self-government contemplates the election of local officers by them. The selection of municipal officers has been held to be peculiarly within the province of the people of the locality.

The power of the legislature over municipal offices and officers has been ably discussed in *The People* v. *Hurlbut,* 24 Mich., and *The People* v. *Detroit,* 28 Mich., under a constitutional provision that "judicial officers of cities and villages shall be elected, and all other officers shall be elected or appointed at such time and in such manner as the legislature may direct;" and it was held in the former case that while the legislature was left free to appoint officers not municipal, such, for example, as a board of police commissioners in and for a city, yet that it was restrained by the above-mentioned provisions, especially by the one last quoted, from itself directly appointing municipal officers, whose duties and authority were plainly and exclusively local; such as the board of water commissioners, and board of sewer commissioners for a particular city.

This constitutional provision of Michigan is very similar to that found in the organic act of this territory upon the same subject. In the case at bar the fact that the interference is with the county government and not a city government may properly be considered. Judge Dillon has drawn the distinction between such corpora-

tions thus: "Municipal corporations proper are called into existence, either at the direct solicitation or by the free consent of the persons composing them, for the promotion of their own local and private advantage and convenience. On the other hand, counties are at most but local organizations, which, for the purposes of civil administration, are invested with a few functions characteristic of a corporate existence. They are local subdivisions of the state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent or concurrent action of the people who inhabit them. The former (municipal) organization is asked for, or, at least, assented to by the people it embraces; the latter (counties) is superimposed by a sovereign and permanent authority. See 7 Ohio St. 109.

"A municipal corporation proper is created mainly for the interest, advantage and convenience of the locality and its people. A county organization is created almost exclusively with a view to the policy of the state at large for purposes of political organization and civil administration in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the administration of justice. With scarcely an exception all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy."

In this view, when the proper emergency arises, an interference on the part of the territory with the county management may be justified, when it would not be in the special and local matters exclusively within the control, and established for the special interest and advantage, of the municipality, and the people within its borders and jurisdiction. Such are the intimate relations of the territory and the county, that the mismanagement of the latter might work serious detriment to the former; might

in fact obstruct the regular operation of the machinery of the territorial government. And it may be well questioned whether or not the authorities of the territory would be held to be derelict in their duty did they allow, without interference, the mismanagement of county affairs. The legislature is the proper judge as to when such emergency may arise, and having acted, the presumption that it did exist in the present case, much as it may be deprecated under ordinary circumstances, may fairly be said to exist. But such legislative action can only be justified in extreme cases, and for the temporary purpose of providing, for the time being, the necessary machinery of the government.