THE PEOPLE, *ex rel.* The Board of Education of Saratoga Springs, *vs.* WILLIAM BENNETT, DANIEL O'GORMAN and HIRAM TEFT, Trustees of the village of Saratoga Springs.

Where the board of trustees of an incorporated village consisted of six members, three of whom voted to raise by tax a sum of money required by statute to be raised, and three voted against the raising of the same; *Held* that this act of the board was, in legal effect, a refusal to raise the required sum, for the reason that a majority did not vote in favor of the requisition.

Neither the officers created by the act of April 12, 1867, "to consolidate the several school districts and parts of districts within the corporate limits of the village of Saratoga Springs, and to establish a free union school or schools therein," (*Laws of* 1867, *ch.* 853,) nor the trustees of school districts within that village, are *county, city, town* or *village* officers, within the meaning of the first and second branches of *section* 2 of article 10 of the State constitution.

The third branch of section 2 of said 10th article of the constitution embraces, in its scope and language, not only trustees of school districts, but also all officers whose offices might be thereafter created; such as boards of education, and the like.

Hence, whether the officers named in the act of April, 1867, are called school trustees, or members of "the board of education," or by any other name, title or character of school officers, and though possessing by their creation

The People v. Bennett.

substantially the same powers, and exercising or attempting to exercise, the functions or duties of school trustees, the legislature did not transcend its legitimate powers by the enactment of the said act, and in the creation of a board of education consisting of the persons named, with the powers therein conferred.

Whether the board of education thus created possesses more or less powers than ordinary school district trustees, they are clearly brought within the third branch of section 2, article 10 of the constitution, as officers "whose offices may hereafter be created by law," and may therefore be appointed by the legislature.

The act of April 12, 1867, is not unconstitutional and void as being in violation of section 16, article 3 of the State constitution, which declares that "no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title."

Although the act in question is *local*, being confined to a particular locality, yet it embraces but one *subject*, viz., the establishment of a free union school 'or schools, within the limits specified.

Where trustees of a village, who were required by a statute to raise and collect by tax, in the same manner as other taxes are collected, such sums' as a board of education created by such statute should deem needful in order to organize and carry on the schools within the limits of said village, on being duly notified by such board of its determination as to the sum needed for the purposes expressed in the act, refused to raise the same by tax ; *Held* that they could be compelled, by *mandamus*, to do so.

MOTION for a mandamus to compel the defendants to raise money by tax.

C. S. Lester, for the relators.

W. A. Beach, for the defendants.

POTTER, J. This is an application by the relators, claiming to be a body corporate, created by statute, (*Chap.* 353 *of the Laws of* 1867,) and that they are thereby invested with certain powers, for educational purposes, within the limits of the village of Saratoga Springs, for a mandamus against the defendants, who are trustees of said village, and who, as such trustees, are, by the terms of the 17th section of the same act, directed and empowered, and it is also therein expressed to be their duty, to raise and collect,

by tax, in the same manner as other taxes are collected, such sums as the said "board of education" shall deem needful in order to organize and carry on the schools within the district, composed of the territory within the corporate limits of said village. The relators have made the required certificate, and notified the defendants of the amount needed for the purposes expressed in said act, to wit, the sum of $6000. The defendants, after such certificate and notice, at a meeting of their board held on the 15th day of June, 1867, and after taking into consideration the said action of the relators, refused to raise the said sum according to such requirements. They placed their refusal on the ground that the act in question is unconstitutional, and gave notice of their said action to the relators.

As the *mandamus* applied for is to compel the defendants to raise the said sum of money under and by virtue of the provisions of the act referred to, it will be our first duty to examine the question so raised between the parties. It may be proper to state, that it appears from the papers before me, that "the board of trustees of said village" consists of six members, three of whom voted to raise the required sum, and the three defendants named in the papers voted against the raising of the same. Such act of that board is, in legal effect, a refusal to raise the said sum, for the reason that a majority did not vote in favor of the requisition.

The defendants claim that the relators show no legal right under this act of the legislature, so far as it constitutes them "the board of education of the union free school of the village of Saratoga Springs," to make such a requisition, inasmuch as the said act is unconstitutional and void; that therefore the relators show no title to their office, or right to require the defendants to raise the said sum of money. The principal or material ground of this objection is, that the *legislature* have assumed to *appoint as*

The People *v.* Bennett.

*officers*, the members of the board of education, in contravention of article X, section 2 of the constitution of this State, which is as follows: "All *county* officers, whose election or appointment is not provided for by this constitution, shall be elected by the electors of the respective counties, or appointed by the board of supervisors, or other county authorities as the legislature shall direct. All *city*, *town* and *village* officers, whose election is not provided for by this constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose. All *other officers*, whose election or appointment is not provided for by this constitution, and *all officers whose office may hereafter be created by law*, shall be elected by the people, *or appointed as the legislature* may direct." We are to presume that the framers of this constitution, when they spoke of *county*, *city*, *town* and *village* officers, spoke of them as such officers were then known and distinguished by existing laws; and statutes were then in existence, in which county, city, town and village officers were designated and particularly enumerated by their names of office.

By article 1, section 17, of this same constitution, it was declared "that all the acts of the legislature then in force, and not repugnant to that constitution, should continue to be the law of the State, subject to such alterations as the legislature might make concerning the same." At that time, there was a statute of this State directing the manner of electing county officers, which was thus preserved in force; but as the officers in question are not claimed to be *county* officers, there is nothing in the first branch of the section 2, article 10 of the constitution, above cited, applying to the officers in question. We therefore give that branch no further consideration. The second branch of this second section of article 10 is made applicable to *city*, *town* and *village* officers. The election

of these, except justices of the peace, is not in terms pro-
vided for in the constitution. They are therefore to be
elected by the electors of such city, town or village, or by
the electors of some division of such city, town or village;
or, are to be appointed by such authorities as the legisla-
ture shall designate for that purpose. Excluding *city*
officers as inapplicable, we may inquire, are the relators
*town* or *village* officers? They certainly do not come within
the enumeration of town officers, as declared in 1 *Revised
Statutes,* 340, § 3; *5th ed.* 815, who are therein specified
to be, supervisor, town clerk, assessors, collector, overseers
of the poor, commissioners of highways, superintendent
of common schools, constables, town sealer of weights
and measures, overseers of highways, and pound masters.
Neither by this enumeration, or otherwise, are the newly
constituted board of education town officers; nor can
they, appropriately, be called such, as we may judicially
notice that this village is but a part of the town. As
inappropriately could trustees of school districts, who
were such before the passage of the act in question, be
called *town* officers. School districts are not limited by
town lines; they are often composed of territory in ad-
joining towns, and they are not elected at town meetings.
They are not properly *village* officers. At the time the
constitution was adopted, the special charter of each vil-
lage contained an enumeration of its proper officers; and
the first *general* law for the incorporation of villages was
subsequently passed in 1847. (*Laws of* 1847, *ch.* 426.)
This act enumerates the list of *village officers,* (§ 25,) as
follows: Five trustees, three assessors, one collector, one
treasurer, one clerk, street commissioners and fire ward-
ens. (Trustees of school districts are not mentioned.)
No others are known as village officers, under the *general*
law, than those specified. The act we are considering has
not named or constituted them town or village officers,
nor does the charter of the village of Saratoga Springs,

The People *v.* Bennett.

(*Laws of* 1866, *chap.* 220,) which enumerates the *village officers* thereof, (§ 4,) name trustees of school districts as village officers.

It is perfectly clear then, that neither the officers created by the act of 1867, (*Laws of* 1867, *chap.* 353,) nor the trustees of school districts within the corporate limits of the village of Saratoga Springs, are, by any known enumeration of officers, *county, city, town* or *village* officers, within the meaning of the first and second branches of section 2, of article 10 of the constitution, referred to.

The third branch of section 2 of said article seems to have been made and intended for just such a case; and it clearly embraces in its scope of language, not only trustees of school districts, but also all officers whose offices might be thereafter created; such as boards of education, and the like; so that, whether the relators are called school trustees, or members of "the board of education," or by any other name, title or character of school officers, and though possessing by their creation substantially the same powers, and exercising, or attempting to exercise, the functions or duties of school trustees, there can exist no reasonable doubt that, as against this objection, the legislature have not transcended their legitimate powers, by the enactment in question, and in the creation of the relators as a board of education, with the powers therein conferred. Whether this board, as created, possesses more or less powers than ordinary school district trustees, they are clearly brought within the third branch of section 2, article 10 of the constitution, as officers "whose offices may hereafter be created by law," and may therefore be appointed by the legislature.

It is also claimed by the defendants, that this act is unconstitutional and void, as being in violation of section 16, article 3 of the constitution, which is in the following words: "No private or local bill which may be passed by the legislature shall embrace more than one subject, and

*that* shall be expressed in the title." If this objection is sound, and true, and has application to the act in question, the defendants are not bound to obey the mandate of this enactment.

I think it may be conceded that the act in question is local, according to the general understanding of that term; it is confined to the locality of Saratoga Springs. The only question then, under this objection, is, does it in fact embrace more than one subject? The title of the act is, " An act to consolidate the several school districts and parts of districts within the corporate limits of Saratoga Springs, and to establish a free union school or schools therein."

What then was the *" subject"* about which the enactment was made? The subject was, " the *establishment of a free union school or schools within the corporate limits of Saratoga Springs.*" If the title of the act had been in the words we have italicized, only, could there have been any doubt that the legislature had power to make all needful and incidental provisions to perfect the objects or *subject* of that act? This necessity might call for the consolidation of the several school districts within that territory, and if so, it could have been done, within the power of the legislature, without expressing it in the title of the act, as they have done. It does no harm in the title, but it is surplusage and needless, even there. This *consolidation* of districts relates to the subject of a free school or schools within that village, and is a convenient part of the necessary machinery to perfect that object, or, "*the subject.*" It is insisted that this act confers upon the board of education the power to order the trustees of the village to raise money, and to tax the citizens for all needful means to organize and carry on such school or schools, in the same manner as other taxes are collected; and that this subject of taxation is not expressed in the title of the act. Is not the raising of money to support and maintain this school

or schools a necessary part of the establishment of the school? Can it be established without means? Is any body taken by surprise because a provision to support the school was inserted in the act? Is a provision that is a necessary part of the *same* subject, to be called *another* and a *different* subject? Did the framers of the constitution intend that every separate provision of every law upon one subject, or having one object, should be expressed in its title? We must not charge them with such absurdities. This constitutional provision was for a practical and sensible purpose. · Had this act contained a provision incorporating the mineral springs of said village, or other subject foreign to schools, it would have been obnoxious to the charge of embracing more than one subject. This suggestion illustrates the meaning of the provision. Such an incorportion would have been a violation of this constitutional provision. The object and meaning of the provision is plain; the provision itself is wise, but I am unable, however, to discover in this act any infraction of the last cited constitutional guard. The act and its various provisions all seem to relate to one object. They all seem to relate to the subject of the bill in question, and to be necessary incidents and appropriate provisions of the law, to organize and carry on the school.

The legislative power of the State, when free from constitutional restrictions, is the supreme power in the enactment of laws. All the citizens of the State owe obedience to its authority, and it is their duty to yield that obedience when laws have been passed with the usual solemnities, except in cases where their nullity and invalidity are beyond reasonable doubt. It is one of the lamentable dispositions of the age, to refuse to obey legislative enactments that conflict with the interests or prejudices of individuals, until the question of their validity has first been passed upon by, and through, the whole series of courts, to the last extreme; and laws intended for the

promotion of the morals, or for the education and im-
provement of the masses, are not only not an exception
to this sentiment of hostility, but seem to excite the more
bitter feelings of opposition than others; and while it is
the conceded right of individuals to resist the operation
of unjust and unconstitutional laws which affect their
property or their rights, and to seek the aid of judicial
power to pronounce such laws void, as to them, they should
also bear in mind that it is a delicate duty for the judicial
branch of the government to come in conflict with, and
to nullify and overthrow, the authority and acts of the
legislative branch. Such acts on the part of the courts
are looked upon with great jealousy, as assuming arbitrary
power. A distinguished judge of Massachusetts, the late
Chief Justice Shaw, well remarked, that " courts of justice,
when called upon to pronounce the invalidity of an act
of legislation, passed with all the forms and solemnities
requisite to give it the force of law, will approach the
question with great caution, examine it in every possible
aspect, and ponder on it as long as deliberation and pa-
tient attention can throw any light upon the subject, and
never declare a statute void, unless the nullity and inval-
idity of the act are placed, in their judgment, beyond rea-
sonable doubt." (16 Pick. 95.)

I have given this cautious examination and thought to
the statute in question, and am entirely clear in the opin-
ion that the objections raised by the defendants are not
sound, or well taken. This, probably, comprises the whole
duty required of me, upon the case as presented; and here
I might properly stop. But I feel disposed to add, that
performing this duty I have been equally cautious not to
allow my individual opinions, as to the benign and whole-
some objects of the acts in question, to have any influence
in the decision. The hostility to the act in question is
doubtless based upon a present belief, by its opponents,
that the execution of its provisions will be oppressive in

---

The People *v.* Bennett.

---

the increased taxation it will occasion. All experience has taught to the contrary of this view. The expenses of criminal police will probably be diminished in a greater proportion than the expense of education is increased.

"Better build school rooms for the boys,
 Than jails and prisons for the men,"

is a sentiment which, if not very poetic, contains a practical lesson of experience.

The defendants, in their opposition, claim to act officially as trustees of the village of Saratoga Springs. The result would be, treating them as such officials, that which way soever this motion is decided, the village corporation or the people of the village would ultimately be made liable to pay the costs. Both parties seem to be litigating at the public expense. The writ of mandamus applied for by the relators is certainly a high prerogative writ of extraordinary power, and which courts are reluctant to put in exercise, except when no other adequate remedy is provided by law; but in a proper case, when the public interests demand its use to compel the performance of duty by public officers, the courts, in the discharge of a proper judicial discretion, will direct it to issue. This seems to me to be such a case. The writ may issue.

I am unable to see in this case such a reasonable cause for the action of the three defendants named, in setting up an opposition to this plain act of the legislature, as to justify me in awarding costs against the village for their refusal to obey an act of the legislature. I think justice will be better promoted by ordering the defendants, Bennett, O'Gorman and Teft, to pay the costs of this motion, personally. Let such be the order.

[SCHENECTADY SPECIAL TERM, July 27, 1867. *Potter*, Justice.]