(21 Misc. Rep. 729.)

### HUTCHINSON et al. v. SKINNER et al.

(Supreme Court, Special Term, Albany County. November, 1897.)

1 PUBLIC SCHOOLS—LOCAL BOARD OF EDUCATION—APPEALS—STATE SUPERINTENDENT—POWER TO OPEN SCHOOLS.

Watervliet City Charter (Laws 1896, c. 905, tit. 5, § 12, subd. 10) provides that the local board of education shall have, "to the exclusion of all boards and officers, except the superintendent of public instruction, * * * the entire supervision and management of the schools of said city." The consolidated school law (Laws 1894, c. 556, tit. 14, §§ 1, 2) provides that any person aggrieved by any decision made by certain school authorities named therein, or "by any official act or decision concerning any other matter under this act, or any other act pertaining to common schools, may appeal to the superintendent of public instruction, who is hereby authorized and required to examine and decide the same, and his decision shall be final and conclusive," and that such superintendent, "in reference to such appeals, shall have power to regulate the practice therein, * * * and to make all orders, by directing the levying of taxes, or otherwise, which may, in his judgment, be proper or necessary to give effect to his decision." The local board having been unable, after repeated meetings, to employ teachers and other employés, in order to open the city schools, for the reason that every resolution offered was defeated by a tie vote, two of the members appealed to the state superintendent, who ordered the board to provide the necessary equipment, and open the schools on a certain day. Such order not being complied with, the state superintendent made an order temporarily appointing teachers and other employés until the local school authorities should designate others as their successors, and caused the schools to be opened. *Held*, that every refusal of such board to pass any of the resolutions offered was a decision or an official act under which an appeal could properly be taken to the state superintendent, who had the jurisdiction, under the law, to examine and decide the same, and also the power to make all orders necessary in his judgment to give effect to his decision.

2. SAME—INJUNCTION.

Even if such order was beyond the jurisdiction of the state superintendent, nevertheless a temporary injunction should not issue to restrain him and the local board from enforcing such order, where the result thereof would be to close the schools at a time when they should be open.

3. SAME—SUIT BY TAXPAYER.

Under the public officers law (Laws 1892, c. 681, art. 1, § 2) the superintendent of public instruction is not a municipal officer, but a state officer, and, as such, was not answerable or subject to an injunction at the suit of a taxpayer, brought under Laws 1892, c. 301, and Code Civ. Proc. § 1925, known as the "Taxpayers' Acts."

Motion by Charles H. Hutchinson and others for an injunction pendente lite to restrain Charles R. Skinner, state superintendent of public instruction, and others, from enforcing his order directing the opening of the public schools in the city of Watervliet. Denied.

Countryman, Du Bois & Bevens (E. Countryman, of counsel), for plaintiffs.

D. E. Ainsworth, for defendant Skinner.

L. C. Warner (J. S. Frost, of counsel), for defendants Braman and Flewellan.

CHESTER, J.　The plaintiffs move for an injunction pendente lite to restrain the defendant Skinner, as state superintendent of public instruction, and the board of education of the city of Watervliet, from enforcing or executing an order made by such superintendent directing the opening of the public schools in the city of Watervliet, and appointing a superintendent, and the necessary force of teachers, janitors, and other employés, and from paying their salaries, and also enjoining the persons so appointed from assuming such positions, and from discharging the duties thereof.　The board of education of Watervliet is, under the law, a bi-partisan board.　It is composed of four persons, each of the two principal political parties having two members.　The mayor is ex officio presiding officer, but is not a member of the board, and has no vote.　Laws 1896, c. 905, tit. 5, §§ 1–6.　The teachers and other employés of the board for the last year were engaged only for that school year.　The new school year commenced in September last. The members of the board have been unable to agree upon the officers and teachers to be employed in the schools for the ensuing school year. Repeated meetings of the board were held during the months of August and September, and no agreement was reached.　Every resolution offered in the board by either side naming teachers and other employés was defeated by a tie vote.　The board, during all that time, and down to the making of this motion, has been in a "deadlock" on this question.　The 7th of September had been fixed upon by the board as the date when the schools should open.　It passed without the employment of a superintendent, a teacher, or a janitor.　The 13th of September was then selected.　That date also passed without any appointments being made, or the schools being opened.　In this emergency the two members of the board who had voted one way upon the matters in difference made an appeal or presented a petition under oath to the state superintendent, charging the board with disregard and contempt of various prior orders made by him; reciting the facts, from their standpoint, concerning the failure of the board to appoint teachers and open the schools; claiming that the two members who had voted the other way were the cause of the trouble, and praying for their removal from office, and for a direction that the schools be opened at once.　The two members whose removal was sought, filed their answer under oath with the state superintendent, reciting the facts from their point of view, and charging the responsibility for the situation upon the other two.　The superintendent thereupon, and on September 27, 1897, made a decision or order in which he refused to remove the two members proceeded against, and by which he directed "the board of education of the city of Watervliet to provide the necessary equipment of qualified teachers, janitors, and necessary employés, and to open the schools of that city to the public residing therein on or before the 4th day of October, 1897."　The board took no action under

this order, and did not comply with it in any respect. The state superintendent then made another order, reciting that the board had willfully refused to comply with the order of September 27th, and that the schools in said city yet remained closed, and no teachers, janitors, or other necessary employés had been appointed by said board, and in which last order he directed Mr. A. M. Wright, an employé of the state department of public instruction, to proceed to the city of Watervliet, and organize the school system of said city as temporary superintendent of schools, with a corps of qualified teachers, consisting of five principals, six assistant principals, and seventeen other teachers, including one drawing teacher, besides one librarian, two truant officers, and eight janitors, who were respectively named in said order, and therein stated to be temporarily appointed to the several positions named, with an annual compensation to each, fixed in the order. The order recited that "said appointments are to continue until the local school authorities of said city shall designate qualified teachers as their successors." The order further directed the board of education of said city to immediately open the school buildings to the teachers named, and place at their disposal the usual and proper furniture and supplies, including fuel and school apparatus, and as often as at the end of each calendar month during the continuation of the services of each teacher, janitor, and the librarian, to audit and to pay to each an equal one-eighth part of the annual compensation therein designated to be paid to each. This last order was made on October 4, 1897. Mr. Wright forthwith went to Watervliet, and the schools were at once opened by him, pursuant to the order, with the aid of the teachers and other employés named therein. It is claimed by the plaintiffs that this order of the state superintendent is without authority of law, and the injunction asked for here is to restrain the further carrying into effect and enforcement of the order.

It is urged by the plaintiffs that under the charter of the city of Watervliet the management and control of the public schools therein is vested in the board of education, which is authorized, under the law, to appoint a superintendent of schools and a librarian, contract and employ all teachers and pay their wages (Laws 1896, c. 905, tit. 5, §§ 9, 12); and that the compulsory education law authorizes the school authorities of each city to appoint truant officers, and fix their compensation (Id. c. 606, § 3). There can be no doubt of the correctness of the claim that it was the duty of the board of education, under the law, to make these appointments, but this duty has not been discharged by reason of the "deadlock" existing in the board. As a result of this failure of the board, the people of an entire city were deprived of the benefits of free common schools; and, if the board alone were to be looked to for relief, the people were likely to continue to be so deprived for an indefinite time. It may be conceded that there was no duty resting upon the board to appoint any particular individual a teacher, or upon the members of the board to vote for any specified person for any position within the gift of the board. These were matters of discretion. But there was a duty resting upon the board, under the law, to open the schools, and provide the necessary force of teachers and other employés for that purpose. The board

failed to perform this duty.    Whether this failure is the result of the zeal of the individual members of the board to promote the interest of personal or political friends, is of but little consequence.    But it is a question of great moment whether or not the people of an entire city are to be deprived of free common schools wherein all their children may be educated, simply because the board fails to discharge the duties imposed upon it by law.    The situation presented by this condition was one in which the people of the entire state have an interest, and not the inhabitants of Watervliet alone, for the common-school system is an institution of the state, and not of any particular locality therein.    It is founded upon the idea that a general dissemination of education is essential to the welfare of the state.    If this were not so, there would be no justification in supporting common schools by general taxation.    The constitution requires that "the legislature shall provide for the maintenance and support of a system of free common schools wherein all the children of this state may be educated."    Article 9, § 1.    The legislature has complied with this mandate of the constitution, and has provided "that there shall be raised by tax in each year upon the real and personal estate of each county within the state, such sum as the legislature shall annually determine necessary for the support of common schools in the state."    Consolidated School Law, tit. 2, art. 1, § 1.    It has also created the office of state superintendent of public instruction, and by the act last referred to has clothed him with large general powers with reference to the state school system, and has given him authority to apportion the state school moneys among the cities, districts, and institutions entitled thereto.    The aggregate amount of the state tax for schools the past year was upwards of $4,000,000, and under the apportionment thereof made by the state superintendent the city of Watervliet is entitled to the sum of $6,000, unless he withholds the same pursuant to the provisions of the law authorizing him so to do in certain cases.    This seems to demonstrate clearly that the people of the entire state have an interest in the application of these school funds in the city of Watervliet, to the purpose for which they were raised and apportioned to said city, namely, the maintenance of free common schools therein.

The charter of Watervliet distinctly recognizes the authority of the state superintendent with reference to the schools of the city, for it provides that the board of education shall have, "to the exclusion of all boards and officers, except the superintendent of public instruction of this state, the entire supervision and management of the schools of said city."    Laws 1896, c. 905, tit. 5, § 12, subd. 10.    With the people of every county in the state being compelled to contribute by general taxation to the state school funds, and thus being directly interested in having free common schools maintained in every part of the state; with the city of Watervliet having apportioned to it $6,000 of these funds, and with its board of education refusing to open its schools to the public as provided and required by law,—the question is presented whether there is any authority under the law in the state superintendent, on proper appeal to him, to open the schools.    The consolidated school law provides that any person conceiving himself aggrieved in consequence of any decision made by certain school authori-

tics named in the act, or "by any official act or decision concerning any other matter under this act, or·any other act pertaining to common schools, may appeal to the superintendent of public instruction, who· is hereby authorized and required to examine and decide the same; and his decision shall be final and conclusive, and not subject to question or review in any place or court whatever." Laws 1894, c. 556, tit. 14,. § 1, subd. 7. And the act further provides that the superintendent, "in reference to such appeals, shall have power to regulate the practice therein, * * * and to make all orders, by directing the levying of taxes, or otherwise, which may, in his judgment, be proper or necessary to give effect to his decision." Consolidated School Law, tit. 14, §§ 1, 2. It is urged that the authority above referred to in relation to appeals is expressly limited to the "official act or decision" of the board of education, and that this case presents no official act or decision which can be brought before the superintendent by appeal, but simply a case of a neglect or refusal or inability to act or decide, and for that reason that the superintendent had no jurisdiction or authority to entertain the appeal, or to make the orders which he did. It is true that there has been an inability on the part of the board to take any affirmative action. The papers show, however, that there have· been repeated resolutions offered at different meetings of the board to appoint teachers and other employés; that repeated amendments to· such resolutions have been proposed in the board; that each resolution and each amendment for these purposes has received two votes in the· affirmative and two votes in the negative. When two members of the· board voted in favor of a resolution, and the only two other members voted against it, it was, under the rules governing parliamentary practice, lost for want of a majority vote, and amounts, in effect, to a de-. cision of the board not to take the action sought to be authorized by the resolution. This principle has been recognized in the case of People v. Bennett, 54 Barb. 480. There it appeared that the board of trustees of the village of Saratoga Springs consisted of six members,. three of whom voted to raise the sum required by the board of education for school purposes, and three of whom voted against it, and the· court held that "such act of that board was, in legal effect, a refusal to raise the said sum, for the reason that a majority did not vote in favor of the requisition." In the case of People v. Eckler, 19 Hun,. 609, it was held that the refusal of a school-district trustee to pay a teacher's wages was a decision within the meaning of that term as· used in the school law, and that the relator was entitled to appeal therefrom to the superintendent of public instruction. I think, therefore,. that every refusal of this board to pass any of the numerous resolutions· offered in the board to appoint teachers or other employés was a decision, or an official act, under which an appeal could properly be taken, pursuant to the school law, to the state superintendent, and that upon such appeal he had the jurisdiction and power under the law to examine and decide the same. He exercised that power, and made the decision of September 27, 1897, above referred to, in which he ordered and directed the board of education to provide the necessary equipment of qualified teachers and other employés, and to open the schools, before the 4th day of October following. The order contained in this decision not being complied with, he had the further

power, under the law, to make all orders proper or necessary in his judgment to give effect to his decision. The paramount object of the decision was to procure the opening of the schools. The schools could not be opened without teachers and other employés. The appointment of the persons named in the subsequent order of the superintendent as teachers, janitors, and truant officers, was but the incident of the main object to be accomplished. The superintendent undoubtedly had power to withhold the public funds, instead of making the order he did, but that would not have caused the schools to be opened. He might have removed the members of the board from office, but that would not have accomplished the desired result. He had the right to make the order which, in his judgment, was necessary to make his former order effective; and, if he had jurisdiction to make the order he did, as I think he had, the propriety of the exercise by him of his discretion is not subject to question by the court. I think, therefore, that he was justified, under the law, when the board refused to open the schools in compliance with his order, to make the subsequent order which he did, even though that involved the temporary appointment by him of a force of teachers and others sufficient to open and conduct the schools.

The granting or refusing of equitable relief by way of injunction depends to a great extent upon the particular facts in each case, and is largely discretionary with the court. Wormser v. Brown, 149 N. Y., at page 172, 43 N. E. 576. If I am wrong in my conclusion that the superintendent had jurisdiction to make the order in question, yet I do not think, under the facts of this case, that a temporary injunction should issue, the result of which would be to close all the public schools in the city at a season of the year when they should be open. Notwithstanding the difficult and embarrassing situation presented by reason of the unfortunate organization of the board of education, the schools are now in full operation, pursuant to the orders and directions of the chief officer of the state charged with the administration of the state school system. Great public injury would result from granting the relief here asked for, and, unless the plaintiffs expect to escape all local taxation for school purposes for the ensuing year, they will not be injured by denying it, for the reason that the papers show that the cost to the city of carrying the superintendent's order into effect is much less than the cost of the schools during the last year, and also than the amount inserted in the budget for that purpose for the current year, largely owing to the fact that the compensation of Mr. Wright, the temporary superintendent of schools designated in the order of the state superintendent, is paid by the state, and not by the city.

There are also other matters standing in the way of granting this motion. The plaintiffs sue as taxpayers. The authority for the action is chapter 301, Laws 1892, and section 1925, Code Civ. Proc., which are known as the "Taxpayers' Acts." These statutes only authorize actions against officers who have acted for or on behalf of any county, town, village, city, or municipal corporation in the state, to prevent waste of public funds, or injury to public property. The superintendent of public instruction is not a municipal officer, but is a

state officer. Public Officers Law (Laws 1892, c. 681, art. 1, § 2). What he has done has been done in his official capacity as state superintendent of public instruction, and he has in no sense acted, nor had he the power to act, for or on behalf of the city, so as to bring him within the provisions of these acts, or to render him answerable or subject to an injunction at the suit of a taxpayer of the city.

The plaintiffs have also failed to make and file the bond required by law in this class of cases. It was essential that this should be done upon the commencement of the action, and a copy thereof served with the summons. Laws 1892, c. 301. For these reasons the motion is denied, with costs.

Motion denied, with costs.