THE STATE EX REL. HARRY W. GALLAGHER, Appellant, v. KANSAS CITY ET AL.—7 S. W. (2d) 357.

Court en Banc, April 4, 1928.

706

*John I. Williamson, Darius A. Brown* and *Prescott Brown* for appellant.

*John T. Barker, E. F. Halstead, Marcy K. Brown, Jr.,* and *William H. Allen* for respondents:

GRAVES, J.—This is one of the many cases arising in Kansas City, and growing out of the discharge of employees who claim to hold positions under Civil Service provisions of the then existing charter and ordinances of Kansas City. The relator, Gallagher, claims to have held the position of meter mechanic in the Meter Division under the Board of Fire and Water Commissioners. The place paid $6.80 per day for the days engaged in work. Relator claims, and for the purposes of this case (in the view we have of the law) it may be admitted, that he stood the civil service examination, and was later appointed to the place by the duly constituted authorities, under civil service provisions of the then charter and ordinances. Relator avers that he was unlawfully discharged without a statement of charges and without a hearing. By this mandamus proceeding he seeks to compel respondents:

"Wherefore, relator prays that this court award a writ of mandamus commanding defendants, the members of the Board of Fire and Water Commissioners of Kansas City, Missouri, or their successors, without further excuse or delay, to restore relator to said position and reinstate relator's name upon the pay roll of the Water Department from and after the date of said unlawful discharge, to-wit, June 2, 1925, until relator shall have been actually restored to said position and certify the same to the City Comptroller with their requisition upon the City Auditor to prepare warrant for relator's said salary and to recognize relator as the lawful meter mechanic, Meter Division of Kansas City, Missouri; commanding defendant Comptroller, or his successor, to approve said pay roll and to present same to the City Auditor, or his successor, and to said Board of Civil Service Commissioners, or their successors, for their endorsement; commanding defendant, said Board of Civil Service Commissioners, or their successors, to endorse said pay roll, commanding defendant City Auditor, or his successor, to draw warrant in favor of relator for such salary, commanding said Comptroller, or his successor, to countersign said warrant and deliver same to the City Auditor, commanding said City Auditor to deliver same to relator and commanding said City Treasurer or his successor to pay said warrant when presented."

Thus it appears we have a mandamus proceeding not only to restore relator to his former position (we shall not call it office), but to compel (by mandamus) the payment to him of his pay during the time he was not in fact rendering service. This case was tried upon agreed facts, and hence we are not left to the pleadings solely. Returns were duly made to the alternative writ of mandamus. These were met by a voluminous reply by relator. In the return it is averred that money was appropriated to pay the holder of this position, and that it had been paid out "to the person occupying and claiming to be the legal holder of said position." The reply does not deny this averment.

By a stipulation signed and filed in the trial court, the cause was "submitted for final judgment of this court on the pleadings, this stipulation and briefs of counsel" and certain agreed facts contained in the stipulation. This stipulation of facts shows in substance the following facts:

(a) That by Ordinance No. 48685, approved October 1, 1924, there was a provision for three meter mechanics in the following language: "3 meter mechanics (when employed) $6.80 per day."

(b) May 19, 1925, the Board of Fire and Water Commissioners wrote relator thus:

"Dear Sir:

"This is to advise you that this board has received information that you are and have been violating Section 510 of the Revised Ordinances of Kansas City, in that you are not now and have not been for the past year a resident of Kansas City, Jackson County, Missouri.

"You are further advised that you will be given a hearing when you may present evidence, if you have any, to show you are and have been a resident of Kansas City, Jackson County, Missouri, before the Board of Fire and Water Commissioners on the second floor, City Hall, on Tuesday, May 26, 1925, at two P. M.

"You are further advised that should it appear at said hearing that you have ceased to reside within Kansas City, Jackson County, Missouri, you will be discharged from your employment in accordance with the aforesaid section."

(c) Relator did not appear in response to this notice, and it is admitted that the record of the Board of Fire and Water Commissioners shows:

"That a hearing was held by the Board of Fire and Water Commissioners on the charges set forth in letter of May 19, 1925; that relator Gallagher did not appear; that the Board of Fire and Water Commissioners, after hearing the evidence, sustained the charges and ordered the discharge of relator Gallagher to that effect."

(d) On May 28th relator was duly notified of the action of the Board, by a letter from the Board reading thus:

"Pursuant to a notice served upon you of charges that were filed against you by the Board of Fire and Water Commissioners under the date of May 19, 1925, a hearing was held on said charges on Tuesday, May 26, 1925.

"After hearing the evidence, the Board unanimously voted to sustain the charge against you for the following reason, to-wit:

"'In that you are and have been violating Section 510 of the Revised Ordinances of Kansas City in that you are not now and have not been for the past year a resident of Kansas City, Jackson County, Missouri.'

"You are hereby notified that in view of the foregoing and on account of the reasons aforesaid, you will on Tuesday, June 2, 1925, be discharged from your position as Meter Mechanic in the Water Division for cause."

(e) The agreed facts further are that the records of the Civil Service Board shows (1) that relator passed the examination for this place, and was put on the eligible list; (2) that he was appointed Meter Mechanic; (3) that he was discharged June 2, 1925; and (4) that said Civil Service Board was notified of his discharge by the Fire and Water Board by letter of June 24, 1925. The stipu-

lation also shows the payments by half months of the wages earned by relator at rate of $6.80 per day for days that he worked. These payments by half months range all the way from $3.40 to $88.40, dependent of course upon the time he actually worked. Finally the agreed facts show as follows:

"That *after the discharge of relator,* there appeared upon the pay-rolls of the Board of Fire and Water Commissioners, in place of the name of the relator, the name of Jesse E. Harris, said name being duly and regularly certified by the Civil Service Board, as Meter Mechanic, Meter Division, and that said payrolls showed payments to said Jesse E. Harris, as follows."

These payments to Harris were by half months and ranged from $81.60 to $88.40 for each half month. Ordinance No. 48685, from which we quoted, supra, was considered in evidence, as also was Section 510 of Ordinance No. 4031, by the terms of the stipulation. It may not turn out to be very material, but this said Section 510 of Ordinance No. 4031, supra, reads:

"No person shall be employed by the city at an annual or monthly salary unless he shall at the time of such employment and at least for one year next preceding such employment, have resided within the territory at the time of his employment included within the corporate limits of the city, and such employee ceasing to reside within the city shall thereby be disqualified for such employment."

Without further details this sufficiently outlines the record for the discussion of what we deem vital the questions in the case.

I. There are at least two contentions that should be discussed in the case, upon the record, as outlined, supra, i. e. (1) it appearing that Kansas City has at least paid a *de facto* officer the salary, if it can be called such, of the position from which relator was discharged or ousted, is there liability upon the part of the city at all? and (2) even if there might be liability, is mandamus the remedy under the facts of the case? The action is not only for payment of salary, but for restoration to office. Respondents contend that there is no liability for the time that the *de facto* officer received the pay from the city. Respondents further contend that mandamus is not the remedy. In other words, respondents say if relator was wrongfully discharged from the position, his action would be certiorari to quash the record of the board so discharging him, or at least by some other appropriate action. They say title to an office or position cannot be determined in a mandamus proceeding. Nor will such action lie to reinstate him to the place, where another has a color of title thereto, by an appointment thereto and is in possession of the office. Of these two questions in their order.

Relator according to his petition took the civil service examination before the Civil Service Board on February 29, 1924, and was

duly placed on the eligible list; having a request from the then Board of Fire and Water Commissioners his name was certified to said Board by the Board of Civil Service on April 11, 1924, and on said last date he was appointed to the position by the Board of Fire and Water Commissioners. All this was under the Kansas City Charter of 1908, as the new charter was not adopted until February, 1925, and most of it, by its terms, was not to become effective until April 10, 1926. [State ex rel. Otto, Attorney-General, v. Kansas City, 310 Mo. 542, 276 S. W. l. c. 391.] The instant case is so briefed and presented.

II. Really the question as to whether payment to a *de facto* officer relieved the city from further liability was decided by the concurrence of five members of this court in the opinion of RAGLAND, J., on the motion for rehearing in the case of State ex rel. v. Coon, 316 Mo. l. c. 543, 296 S. W. l. c. 102. It is true, that inasmuch as Judge RAGLAND, in concluding the opinion, said the question, even if it had been properly pleaded (and he thought it had not), was no justification or ground for granting a writ of prohibition, it might be said to have rendered what was there said *mere obiter*. In strict legal phraseology it might be called *obiter*, but it was clearly written to announce what was thought to be sound law, if upon the trial of the case the pleadings were so amended (before trial *nisi* of the particular case) as to make such payment an issue in the mandamus case then pending before Judge Coon in the Circuit Court of Jackson County, entitled State ex rel. Dee Picket, Relator, v. Kansas City et al., Respondents. The Coon case was in prohibition (an original proceeding here), and in concluding the original opinion Judge RAGLAND, 316 Mo. l. c. 544, 296 S. W. 97, said:

"The trial of the cases will also necessarily call for a judicial determination of the truth of the allegations contained in the petition in each case, and also the sufficiency of the defenses, if any, which may be interposed, such as *acquiescence, estoppel, or abandonment.* Now, it is clear that all of these matters fall within the competence of a court of general jurisdiction; as to mere mode of procedure, it is not suggested, nor does it appear, that the circuit court has in any respect departed from long-established paths. If, therefore, it does all that relator says it has threatened to do, it will not have exceeded its lawful jurisdiction in any particular. If it commits error, an adequate remedy through appeal or writ of error will be available to relator."

This shows that he thought, "acquiescence, estoppel, or abandonment" might be legitimate defenses, if pleaded, to Dee Picket's action pending in Judge Coon's court. Upon considering the motion for rehearing in the Coon case, supra, it evidently occurred to him

that payment to a *de facto* officer, if pleaded, was a valid defense, and so thinking wrote purposely to advise the court as to what he should do, if upon a trial *nisi* the pleadings were made to include the defense, and the facts showed the defense. Such would not make what was said *strictly obiter*. It is only friendly legal advice to the lower court for the trial of the case. We have even suggested the amendments deemed proper in the interest of justice. Upon appeals, in reversing them, we often do as much. It must be further noted that Judge RAGLAND carefully analyzed some of the Missouri cases, and especially those Missouri cases which were made the basis for our ruling in State ex rel. Hamilton v. Kansas City, 303 Mo. 50, 259 S. W. 1045, and finally concluded that the present question had not been squarely ruled in Missouri. This Hamilton case heads the list of cases granting salaries to discharged Kansas City officials and employees. All of this shows no intent to write *obiter*. We concurred in this part of the opinion on the motion for rehearing, thinking that the necessary concurrences would settle that legal question. Not only in the case then pending before Judge Coon, but in all others so situated. It seems that it *has* not settled it in the minds of the distinguished counsel for the relator herein. We shall therefore add, if we can, to what Judge RAGLAND has said upon the question. To our minds this defense is a bar to the present action, under the great weight of authority, and we shall attempt to so show in succeeding paragraphs. Even *obiter* often turns out to be sound law.

III. We have pending before Division One, the case of State ex rel. Goldman v. Kansas City. (See page 1078, this volume.) This is another of these Kansas City salary and restoration cases. Unfortunately it fell to the writer herein for disposition in Division. It is a *very much briefed* case, and we have availed ourselves of these briefs in writing herein. The briefs in Goldman's case, infra, cover fully the questions we are discussing in the instant case, and much more. The fact is that these cases have been briefed so much that counsel have lost sight of some vital matters. This applies to both sides. Thus in one brief we find: ''The point under discussion is a narrow one: to-wit, *whether or not the paying power, having unlawfully discharged an officer lawfully in possession of an office, can escape liability, when sued for the salary by the de jure officer so discharged, by showing that such paying power had placed a de facto officer in such office and paid him the salary.''*

The instant case should be made plain at this point. The Civil Service Board of Kansas City, after examination, placed Gallagher upon the eligible list. The Board of Fire and Water Commissioners needed a man, called upon the Civil Service Board for its recom-

mendations and that board certified to the Fire and Water Board the name of relator, and by the latter board Gallagher was appointed to the place. Later this same board (Board of Fire and Water Commissioners), after giving Gallagher notice, tried and heard the case, and discharged him, and the Civil Service Board certified out another man, whom the Fire and Water Board appointed, and who entered upon the work, discharged the duties of the place or position, and was during such time paid by the city. For these same funds Gallagher is now suing in the instant case. Under these facts, relator's counsel uses the language, supra. They say the "*paying power*," the city, *wrongfully discharged* the relator, and thus accrues his right of action. They base it upon the sole ground of the alleged wrongful act of the Board of Fire and Water Commissioners in discharging relator from a civil service position. For the purposes of this case these charges made by relator may be admitted to the very fullest extent, and yet the "paying power," Kansas City, has done nothing which gives to relator any right of action against it, for the alleged wrongful act of the Board of Fire and Water Commissioners in discharging relator. The erroneous idea expressed in the language, supra, has caused much of the confusion in the case law of Missouri and elsewhere. It crept into State ex rel. Hamilton, v. Kansas City, 303 Mo. l. c. 67, through the medium of loose language in Gracey v. St. Louis, 213 Mo. l. c. 397, and State ex rel. v. Walbridge, 153 Mo. l. c. 203. From the Hamilton case it spread out into quite a list of subsequent cases (involving discharged Kansas City employees under civil service provisions of charter and ordinances), in all of which a vital question has been overlooked. The wrongful discharge of a civil service officer or employee, by the Board of Fire and Water Commissioners, or the head of any similar department of the said city, vested with the power of appointing officers or employees, gives no right of action of any kind against the city, "the paying power," as suggested by counsel. This we say upon fundamental grounds of well established law.

This Board of Fire and Water Commissioners, as well as all other heads of city governmental departments, in the matter of discharging or appointing an official or employee, cannot render the city responsible in any manner by reason of their wrongful acts. These officials and boards are, when so acting, in the performance of the governmental functions, as distinguished from the proprietary functions, of the municipal corporation. The early case law of Missouri was well collected and discussed by SMITH, P. J., in Bullmaster v. City of St. Joseph, 70 Mo. App. 60, tried *nisi* by our late brother WOODSON, and affirmed by SMITH, P. J., and associates GILL and ELLISON, JJ., in the opinion, supra. The doctrine of the Bullmaster case has been fully approved by this court in Barree v. Cape Girar-

deau, 197 Mo. l. c. 389. This court had previously discussed the subject in Ulrich v. St. Louis, 112 Mo. l. c. 148, whereat we quoted approvingly the rule from 1 Shearman & Redfield on Negligence, wherein the governmental functions of the cities are discussed and distinguished from mere proprietary functions. Our later cases accord with these earlier cases, and under our case law this Board of Fire and Water Commissioners, and other like departmental heads of Kansas City, when in the service herein involved, are governmental agencies for whose wrongful acts the municipality is not liable. As suggested in one of the cited cases, these bodies exercise legislative and judicial functions, in a way. Such bodies, exercising purely governmental functions, include the law-making, as well as the others indicated. Their wrongs, whatever they be, furnish no right of action of any kind against the city, "the paying power." In cases involving the payment of *de facto* officers the refusal of payment to the discharged *de jure* officer, is put upon this ground by the Kansas and other state courts. [Bassler v. Gordon, Mayor (Kan.), 253 Pac. 228; Gorman v. County Commissioners, 1 Idaho, l. c. 659.]

It is properly so placed. These functions are those exercised for the general public good and welfare of the citizens of the municipality.

With the errors occasioned by the idea that the municipality is in any way liable for the wrongs of these governmental agencies, eliminated from this case, and some of our case law, we take up next the rule as to the effect of payment to a *de facto* officer.

Before doing so we call attention to another line of loose expressions which has occasioned misleading conclusions. They are those found in Gracey v. St. Louis, 213 Mo. l. c. 397, and State ex rel. v. Walbridge, 153 Mo. l. c. 203, cited in the Gracey case. "The legal right to the office carried with it the right to the salary" is one expression. If it is meant by such an expression that the municipality, which in good faith has paid a *de facto* officer, can be made to pay the *de jure* officer the same salary, then the expression is not only misleading, but declares against the great weight of authority, as will be noted when we state this rule. Even in our own cases other similar misleading expressions are found.

IV. To further and fully relieve what Ragland, J., said on the motion for rehearing in State ex rel. v. Coon, 316 Mo. l. c. 552 to 557, 296 S. W. l. c. 102 to 104, from the charge of being *obiter*, we endorse and approve all that he said therein upon the question of the payment of a salary to a *de facto* officer as being a complete defense to an action by a *de jure* officer for the salary during the occupancy of the office by the *de facto* officer. In this ruling (now urged as *dicta*), five of our members then concurred. Of the other two (then members), one did not hear the case and was therefore not sitting, and the other chose to refrain from expressing an opinion upon the

merits of the case, then pending before Judge Coon of the Circuit Court of Jackson County. *Vide,* 316 Mo. l. c. 557, 296 S. W. l. c. 104. We have now a case wherein the merits of the case are involved, and wherein the exact issue is involved, and what we *now* say cannot be called *obiter,* and we *now* say, with the issue squarely before us, that we fully approve of what was said by Judge RAG-LAND, upon the question of the city's liability for salary paid to a *de facto,* when sued for the same salary by the *de jure,* officer. With this we might well rest this case, because the opinion of RAGLAND, J., indicates and shows clearly that such is the general rule, i. e. that salary paid to the *de facto* officer cannot be recovered from the city by the *de jure* officer in a suit for that purpose. In other words, that the payment of the *de facto* officer is a complete and full defense for the city. The honest insistence of counsel in the case now before us calls for a fuller expression on the rule, and this we shall give in the paragraphs following.

. V. It is hard to add to what RAGLAND, J., said in State ex rel. v. Coon, 316 Mo. l. c. 552 to 557, 296 S. W. l. c. 102 to 104, both inclusive, except at the expense of brevity. The insistence of counsel for relator herein justifies us in casting aside brevity. Judge RAG-LAND (316 Mo. 555, 296 S. W. 103) quoted at length from Dolan v. City of New York, 68 N. Y. 274. In that quotation will be found the statement of the rule, and the reasons for the rule. We refer to this Coon case to shorten this presentation of the matter. We want to add, that unless all text-writers and all annotators are in error, the rule as stated in the Dolan case, and the reasons therefor, have the support of the overwhelming weight of authority. There are cases that sustain the contentions of relator, but they are so far in the minority, and so far from a fair consideration of fundamental principles, that we must refuse to follow them. The rule of the Dolan case, supra, is the rule in the great weight of the case law of the United States. We cannot resist a short quotation from another New York case. This, for the reason that it covers two propositions in the case at bar. In Terhune v. Mayor, 88 N. Y. l. c. 251, EARL, J., said:

"It is no longer open to question in this State that payment to a *de facto* officer while he is holding the office and discharging its duties is a defense to an action brought by the *de jure* officer to recover the same salary. [Dolan v. The Mayor, 68 N. Y. 278; McVeany v. The Mayor, 80 id. 185.]

"But the plaintiff claims that his action may be treated as one to recover of the city damages for his wrongful dismissal from office. It is a sufficient answer to this claim that the city did not dismiss him from his office. The fire commissioners were public officers and not agents of the city. [Maxmilian v. The Mayor, 62 N. Y. 160;

Tone v. The Mayor, 70 id. 157; Ham v. The Mayor, id. 459; Smith v. The City of Rochester, 76 id. 513.] The city is no more liable for their wrong in dismissing the plaintiff than it would have been if they had committed an assault and battery upon him.

"If the plaintiff has any remedy for the damages which he has sustained it must be by an action against the fire commissioner for his wrongful dismissal or by an action against Seery to recover the salary which as between him and the plaintiff he wrongfully received."

The latter ruling by EARL, J., supra, fully accords with what we have said supra, about the alleged wrongful act of the Kansas City Board of Fire and Water Commissioners in discharging the relator herein. This board was a governmental agency, performing purely governmental functions, as distinguished from the proprietary functions of the municipality, and Kansas City was in nowise liable for the alleged wrongful act. We cited two cases, supra, covering this matter, but there are many to the same effect, as is the Terhune case (New York), supra, and the Bassler-Gordon case (Kansas), and the Gorman case (Idaho), cited under our Point III, supra. Missouri case law fully settles this particular point, without going into or citing the great number of cases elsewhere.

Going back now to the original thought. Learned counsel for relator are absolutely wrong in contending that their contentions have the weight of authority. As suggested above, they are wrong, or practically every text-writer and annotator has gone wrong. We frankly admit that there is some authority for the position that one wrongfully discharged from an office or position can recover from the municipality, although payment has been made to a *de facto* officer, but to say such a rule has the weight of judicial decision in the United States would not accord with the facts. Not only so, but it does not accord with good sound reason, in our judgment, as the reasons for the majority rule find expression in the sundry cases, beginning with Dolan's case, supra. The long list of cases cited by RAGLAND, J., in the Coon case, supra (316 Mo. 554-555, 296 S. W. 1. c. 103), and the comments on the rule announced therein, are taken from the annotations appended to the case of Howard v. Burke (Illinois), decided in 1910, and published in 140 American State Reports at page 159. The quotation from the annotator is found in 140 Am. St. 1. c. 191. This annotator does not say in specific terms where the weight of authority is, but an examination of his able and extensive note, wherein there is an outline of the rulings generally, will show clearly that he is simply stating the majority rule. We have not the space to analyze all the cases. We must be content with what the text-writers and annotators say. We will add a word here, however, from the Supreme Court of Colorado, in

case of Commissioners of El Paso County v. W. E. Rhode et al., reported in 16 L. R. A. (N. S.) 794. On page 797 the Colorado court, after citing cases supporting the majority rule, thus speaks:

"The states holding contrary views are California, Pennsylvania, Maine, and Tennessee. *The great weight of authority* is in favor of the doctrine that the county, having paid the officer *de facto*, cannot be held to pay the officer *de jure*, for the same period, and, if defendant Rhode could not recover judgment against the county for his salary during the period when the office was held by Steinmetz, it follows as a matter of course that he had no right to pay himself out of the public funds. Consequently the judgment of the district court should have been for the plaintiff, and not for the defendants. It will therefore be reversed and remanded, with instructions to enter judgment in favor of the plaintiff and against the defendants, according to the prayer of the complaint."

The district court had allowed pay to the *de jure* officer for the period the office was filled by an officer *de facto*. This judgment the Supreme Court reversed, under the majority rule. To this case there is a note covering some of the later cases, which could be read with interest. [See 16 L. R. A. (N. S.) p. 794, et seq.] This annotator says the weight of authority is with the Dolan case. Thus he speaks:

"There is, however, an argument which is, of itself, sufficient to support the rule recognized *by the weight of authority,* and which seems logically unassailable. This is that, since it is for the interest of the community that public offices should be filled and the duties of the offices discharged by either an officer *de jure* or an officer *de facto,* and, in order to secure such service, the officer performing them must ordinarily be paid, payment in good faith to the officer discharging the duties of the office should be deemed justified, the *de jure* officer being remitted to an action against the *de facto* incumbent for the fees or salary received by him."

Going now to another annotator. In 4 A. & E. Ann. Cases, page 671, we find reported and annotated the Kentucky case (117 Ky. 747) of Noll v. Coulter. The annotations begin on page 673 of 4 A. & E. Ann. Cases. The learned annotator collates the cases under two heads, (1) "Majority Rule," and (2) "Minority Rule." The cases relied upon by relator in this instant case are cited under the "Minority Rule." Under the heading "Majority Rule" are cited such cases as Dolan v. New York, 68 N. Y. 274, Auditors v. Benoit, 20 Mich. 176, and State v. Clark, 52 Mo. 508. Under the heading "Minority Rule" is People ex rel. Dorsey v. Smyth, 28 Cal. 21, and other cases relied upon by relator in this case.

The Benoit case, supra, was one of the first to rule that the municipality was not liable to the officer *de jure* for salary actually paid

to an officer *de facto.* In other words, it heads the list of cases usually cited under this rule. The case from this court cited as State v. Clark, supra, is in fact State ex rel. Vail v. George B. Clark, State Auditor, 52 Mo. 508. This case from our own court is cited with approval in the Benoit case, supra, from Michigan. In the Clark case this court not only approved of the Benoit case, but announced a similar doctrine. After ruling that a named statute did not apply to an action brought by the State at the relation of the Attorney-General to oust one Vail from the office of circuit judge, as to a suggested liability if the State continued to pay Vail, *de facto* circuit judge, the salary, the court at page 512, said:

"It is also insisted that, as the primary object of the act was to protect the treasury against what is claimed to be unjust and illegal demands, it therefore applies to a contest by the State, as well as to a contest by an individual. *This view results from the erroneous assumption that the State would incur a double liability if the proceeding now pending against the relator should result in ousting him from the office,* and that he is not entitled to the salary received in the meantime. The commission issued to the relator invested him with the title, and is prima-facie evidence of his right to the office. It gave him the possession and the power to exercise its functions, of which he could be deprived only on due process, in the manner prescribed by law. [State ex rel. Vail v. Draper, 48 Mo. 213.] He alone is entitled to the emoluments of the office, until the State, by a proper proceeding, has revoked the authority with which it has invested him. Meanwhile the auditor cannot rightfully withhold the salary. *There could therefore be no legal claim against the State for the salary so paid on the part of one who might hereafter establish a better right to the office.* His recourse, if he has any, would in such case be against the relator, not the State. [The Auditor of Wayne Co. v. Benoit and the authorities there cited, 20 Mich. 176; Hunter v. Chandler, 45 Mo. 452.]

"Peremptory writ ordered. The other judges concur, except Judge SHERWOOD who is absent."

This case not only approves of the ruling in the Benoit case from Michigan, but it specifically says that even if Vail were later ousted by one who might establish a better right to the office, yet the State, having paid the salary to Vail as the one actually serving the State as circuit judge, would not be further liable. In other words, the State having paid the salary to the *de facto* officer would not be liable to the *de jure* officer, if such an officer appeared and if he made claim therefor. There is also much in Hunter v. Chandler, 45 Mo. 452, to justify the statement by writers and courts that this court approved of what is called and is in fact the majority rule. There is no question that by several of our old cases, other than these two,

we contributed to the majority rule. This fact will more fully appear as we proceed.

Tanner v. Edwards (Utah), 10 A. & E. Ann. Cases, 1091, is another of the cases relied upon by relator, and cited as Tanner v. Edwards, 31 Utah, 80. To this case the learned annotator has appended a note (10 A. & E. Ann. Cases, 1. c. 1093) and in which he discusses the later cases. In this note he says:

"It is the purpose of the present note to discuss the recent cases passing upon the right of a *de jure* officer to recover from the State or municipality the salary paid to a *de facto* officer during the latter's incumbency. For a further discussion of this question, see note to Nall v. Coulter, 4 Ann. Cas. 671, wherein the earlier cases are collected and considered at length.

"*Contrary to the ruling of the reported case, and in accord with the majority rule laid* down in the note above referred to, the following *recent cases support the proposition that* a state or municipality which has, before judgment of ouster, paid to a *de facto* officer the salary of the office held at the time of payment, is not liable to the *de jure* officer for such salary."

This annotator not only calls the rule we are herein approving the majority rule, but he shows that the trend of the majority of the later cases accord with the "Majority Rule" as announced by the annotator in 4 A. & E. Ann. Cases, supra. He further indicates and shows that at least a part of the viciousness of the California rule, as stated in State ex rel. Dorsey v. Smyth, 28 Cal. 21, and a later case in 37 Cal. 193, has been removed by an amendment of a statute. *Vide* 10 A. & E. Ann. Cases, 1. c. 1093 and 1094. On page 1094, this annotator says:

"The California statute above referred to, it will be noted, changes the rule laid down in Dorsey v. Smyth, 28 Cal. 21, and Carroll v. Siebenthaler, 37 Cal. 193, cited in the original note."

This Smyth case, now disowned by the statutes of the State, and purposely disowned, in my judgment, is one of the foundation stones of the "Minority Rule" so urgently pressed upon us by relator in the present case. But so run the conclusions and views of annotators. They seem to be unanimous. Text-writers have also run the same way. They comment upon both lines of cases, but indicate quite clearly what they deem to be the weight of authority. They may not say so in exact words, but the trend of their texts so indicates. In our own State we have McQuillin on Municipal Corporations. Personally Judge McQUILLIN seems to feel kindly to the minority rule, but his whole text and the citations thereunder shows where the weight of authority lies. Thus in McQuillin on Municipal Corporations, Section 518, page 1125, it is said:

"It has often been adjudged that the payment of the salary belonging to the office to the *de facto* officer by legal authority prior to the settlement of the title to the office against him will deprive the *de jure* officer of the right to recover such salary from the public. In such case, the prevailing rule is to give the *de jure* officer a right to recover from the *de facto* officer. The theory is that the law protects the municipal corporation from a second payment of compensation once paid to one who actually discharged the duties of an office with color of title. It is said that this rule applies whether payment is in the form of a salary or fees or whether the office held was by appointment or election."

Under this text the learned judge cites most of the cases usually cited as supporting the majority rule, including the Benoit case from Michigan, supra, the Dolan case from New York, supra, and also cites as approving such rule two of our own cases, i. e. State ex rel. v. Clark, 52 Mo. 508, and Hunter v. Chandler, 45 Mo. 452. The learned judge then lodges a rather personal view, in this language:

"However, the more reasonable rule has often been applied, namely, allowing the *de jure* officer the salary from the public fund, although it has been received by the *de facto* officer."

Under this is cited the few cases really in point as supporting the minority rule. His citations clearly show wherein is the weight of authority, and clearly indicate that what he calls the "more reasonable" rule is very much a minority rule.

Turning now to 1 Dillon on Municipal Corporations, on pages 743 and 744 we find it announced as a general rule that the *de jure* officer, or one wrongfully removed from office, is entitled to, and may recover the salary, but he winds up with this all inclusive qualification to his general rule, *"provided the city has not paid any other person for the performance of the duties of the office."* The concluding modification destroys practically all that is said previously, and is an announcement to the effect that payment to a *de facto* officer for the performance of the duties of the officer relieves the city of liability to the *de jure* officer. The author, on page 745, then gives the reasons for the majority rule thus:

"But for reasons of public policy, and recognizing payment to a *de facto* officer while he is holding the office and discharging its duties as a defense to an action brought by the *de jure* officer to recover the same salary, it is held in many jurisdictions that an officer or employee who has been wrongfully removed, or otherwise wrongfully excluded from office, cannot recover against the city for salary during the period when his office was filled and his salary paid to another appointee. In some jurisdictions, too, this rule is applied to payments made to *de facto* occupants of positions which are mere employments and do not rise to the dignity of offices."

So we have Dillon forced to acknowledge that the rule is that payment to the *de facto* officer is a good defense as against an action by the *de jure* officer for the same salary, and he properly states the good and sufficient reasons for the rule, as given in the sundry cases. For the announcement in the first part of his paragraph 429 on page 743 his citations are headed by the old Smyth case, 28 Cal. 21— the case which heads the list for the minority rule. For the proviso quoted and underlined, supra, we find cited cases which support the majority rule, including such cases as Saline County v. Anderson, 20 Kan. 298, the Benoit case, 20 Mich. 176, State ex rel. v. Clark, 52 Mo. 508, and the Dolan and Terhune cases from New York, discussed, supra.

In 8 Am. & Eng. Ency. Law (2 Ed.) page 813, the rule is thus stated:

"The general rule is that a state, county, or municipality which, before judgment of ouster against a *de facto* officer, has paid him the salary of the office due at the time of payment is protected against any liability to the *de jure* officer for such salary, especially where the latter has slept upon his rights until after services have been performed by, and the salary has been paid to, a *de facto* incumbent."

The latter part goes to laches of the *de jure* officer in standing by and knowing that the *de facto* officer is being paid, by the public, and his failure to test title to the office claimed by the two, i. e. the *de jure* and *de facto* officers. But we are not discussing laches in the instant case. This author for the text, supra, cites the cases then usually cited for the majority rule, including State ex rel. v. Clark, 52 Mo. 508, which we have discussed, supra. On page 805 the author states the minority rule, and cites the old California Smyth case, 28 Cal. 21, and cases of that line. But, as we have said the author states the *general* rule to be as quoted, supra.

In Mechem's Public Officers, Section 871, page 583, the rule is thus stated:

"But when the title to the office is in controversy, and one of the claimants has entered under color of title and performed the duties of the office, and drawn the salary for the time he so performed, the other claimant, upon establishing his title to the office, cannot recover from the public the amount so paid to the officer *de facto* for the services performed by him before the adjudication upon the title. The remedy of the officer *de jure* is, as has been seen, in an action against the officer *de facto* to recover the amount so received by him. The fact that the officer *de facto* is insolvent, does not affect the question.

"But where the public authorities continue to pay the officer *de facto* after notice of the adjudication in favor of the officer *de jure*,

the latter may recover from the public the amount so paid after such adjudication and notice.''

In the case at bar the officer actually serving in the office had been duly appointed and was claiming the office as a *de jure* officer.

Going now to the briefs for appellant we find Section 500 of Throop on Public Officers much emphasized and relied upon for the contention of relator (appellant) herein. Had counsel turned to Section 513 of Throop he would have found the real question here at issue stated by Throop, thus:

''The correct rule upon this subject, *and also in the case where the municipality has paid the compensation attached to the office, to a person who has wrongfully obtained possession of it, is stated in a case in the New York Court of Appeals,* decided in the year 1880.''

The case cited and referred to by Throop is McVeany v. Mayor, 80 N. Y. 185. In this case that distinguished jurist, Judge FOLGER (80 N. Y. 1. c. 193 and 194) said:

''It is, then, to be deduced from the cases in this State, that, as a general principle, the rendition of official service must precede a right to demand and recover the compensation given by law to the officer; that the disbursing officer of a municipality is protected from a second payment of that compensation, and so is his superior, *when he has once made payment to one actually in the office, discharging the duties of it with color of title, with his right thereto not determined against him by a competent tribunal;* that when there has been such an adjudication, any amount of compensation for services rendered, *not paid to him,* is due and payable to the one adjudicated to be *the officer de jure,* and may be recovered by the latter of the municipality.''

The italics are ours. This is the New York rule, which Throop says is the correct rule. In this case one Culkin was the *de facto* officer. While such the salary was paid to Culkin. By court decision McVeany was declared the rightful (*de jure*) officer. But even after the city had notice of this court decision, it paid the salary to Culkin. Judge FOLGER ruled as herein above stated. As to salary paid Culkin before the court decision, and while he was thus *de facto* officer, the ruling was that the city was not liable. But it was further ruled, and we think correctly, that the city was liable for salary paid after a court had determined that Culkin was a mere usurper, without color of title. Throop lends no comfort to relator in this case.

In 43 Corpus Juris, Section 1144, page 688, the rule is thus announced:

''Where an officer was wrongfully removed, the rule is that he may *on reinstatement* recover from the municipality the salary that accrued during the period of removal, unless he has acquiesced in

the removal, *or unless it appears that such salary was paid to a de facto officer holding the office and performing the 'duties,* but the latter exception is not applicable where no one is especially appointed in place of a *de jure* officer, or where the salary was not in good faith paid to the *de facto* officer.''

The italics are ours. Just following this the same authority says: ''It is *generally held* that the title to an office cannot be tried in an action to recover the salary incident thereto, and that *reinstatement by a competent legal tribunal in 'direct proceedings for that purpose is a condition precedent to the right of recovery,* although it is held in some jurisdictions that an officer wrongfully removed may bring suit against the municipality for his wages or salary without first having been reinstated.''

The last clause of this last quoted paragraph is made to rest largely upon some remarks in the Gracey case, 213 Mo. 384, which case we have discussed supra. In the instant case there was no court action by certiorari, nor was quo warranto sought.

Counsel for relator cite us to 22 Ruling Case Law, sec. 240, pp. 541-542. There is some little comfort in some things in said section contained, but it is the same comfort to be found in what the annotators call the minority rule. Counsel should have looked at Section 241 of 22 Ruling Case Law on the very next page (543), for the statement of the majority rule in this language:

''The rule permitting a *de jure* officer to recover the salary of his office during the period of his wrongful exclusion, although such salary has been already paid to an officer *de facto, is not followed in a large number of jurisdictions.* Instead, the principle is affirmed that if a person is wrongfully suspended or excluded from office and the salary up to the time of his restoration is actually paid to a *de facto* officer, the officer rightfully entitled to the office cannot recover the salary during the period of his wrongful exclusion. This rule is followed although the fiscal officers may have known at the time they paid such salary that the question as to the title to the office was in litigation, and although the *de facto* officer is insolvent.''

Here we find cited a number of the cases supporting the majority rule, but by no means half of such cases. We shall not go further. We have been painfully tedious so far, but our excuse is that the rule should be finally settled and settled right so far as Missouri is concerned. Our older cases were right. Our later ones of dubious value in determining what the rule should be. The overwhelming weight of authority elsewhere is to the effect that payment of salary, or fees, to a *de facto* officer, holding under color of title, discharges the municipality from further liability for the money so paid, when suit is brought by the *de jure* officer. We have read every opinion on both sides of this question (a long and tedious work), and have

no hesitancy in saying that such rule has support of all the well reasoned cases. The rule is well grounded not only on the great number of cases asserting it, but on the reasons assigned. Relator cannot recover the salary sought in this case under this rule.

VI. As said, this relator was removed by the Board of Fire and Water Commissioners, which board had appointed him. It is not contended that this board, which was the head of a large city department, could not remove relator, but the claim is that it could not remove him upon the particular charge made. Under Section 10 of Article 15 of the Charter of 1908 this board was, in the matter of discharging relator, acting in a judicial capacity, or quasi-judicial capacity. There was no power given the board to discharge at pleasure. Such power to discharge at pleasure is not usually found in charter provisions providing for civil service, as does Article 15 of this charter. A power to discharge at pleasure would destroy civil service, so that the power to discharge in such cases must be one upon notice and hearing. Such a hearing is judicial in character, and such a body when so engaged is judicial in character. So runs the law generally. The nature of the act, rather than the character of the board, officers, or body performing the act, determines whether a judicial or semi-judicial function is performed. A hearing and trial upon notice and charges partakes of a judicial function. [State ex rel. Davidson v. Caldwell, 310 Mo. l. c. 406-7; Lansdon v. St. Brd. of Canvassers, 18 Idaho, 596; State ex rel. Marion v. Dawson, 284 Mo. 491; State ex rel. Flowers v. Morehead, 256 Mo. 683; State ex rel. Tedford v. Knott, 207 Mo. 167; State ex rel. v. Harty, 276 Mo. 583; State ex rel. v. Bank, 279 Mo. l. c. 234, et seq.] Missouri cases should suffice, but the rule is the same elsewhere as is shown by the cases following. Some of them cover the discharge of employees under civil service as we have here. [Aldermen of Denver v. Darrow, 13 Colo. l. c. 468, whereat the court quotes with approval the following from 1 Dillon on Municipal Corporations: "The proceeding, in all cases where the motion is for cause, is adversary or judicial in character." See also: The Mayor and Council of Macon v. Shaw, 16 Ga. 172; Merrick v. Township Board (Mich.). 2 N. W. 922; State ex rel. v. McCall, 127 Minn. l. c. 160; Hagerty v. Shedd (N. H.); 74 Atl. 1055; People ex rel. v. Griffing. Mayor. 152 N. Y. Supp. 113; Crowe v. Albee (Ore.), 169 Pac. 785; State ex rel. v. Goodland (Wis.), 150 N. W. 488; Regina v. Burns (England), 2 Ld. Raym. 1265.]

This judgment of discharge, entered by this board, like the judgment of regular courts, is not subject to collateral attack, unless absolutely void upon the face. [State ex rel. Johnson v. Bank, 279

Mo. l. c. 236 et seq.; Boonville National Bank v. Schlotzhauer, County Collector, 317 Mo. l. c. 1317, 298 S. W. l. c. 737.]

There is no appeal provided for by charter or law, so to relator in this case, and in all cases of similar character, there are left but three methods of procedure, i. e. (1) by certiorari, to quash the record and judgment of the board, if the board acted wholly without jurisdiction, or in excess of its granted jurisdiction, (2) by direct action in equity to set aside the judgment for fraud entering into the very concoction thereof, or (3) proceed by appropriate remedy on the theory that the judgment of discharge upon its face is absolutely void and can therefore be collaterally attacked. Relator has chosen the latter, and the question is whether he has chosen a proper remedy. Had he brought certiorari and had the judgment of discharge been annulled his prior appointment would have been effective. The same would have been true had he charged fraud in the very concoction of the judgment and in equity had the judgment of discharge been set aside for fraud. He did neither and hence the judgment of discharge stands against him for whatever it may be worth judged by the face of the judgment alone. Relator's contention is, and must be, that the judgment is void upon its face, and can be attacked collaterally, as he has done in this mandamus proceeding, and he asserts that mandamus is the proper remedy. The city contends that mandamus is never the remedy, when the office, at the time, is filled by another and claimed by such other person under color of title; that in such case title to the office is involved; that there are two claimants and that the title or right to the office cannot be determined in an action for salary to which the person in actual possession, under color of title, is not a party, or in any other kind of action to which the de facto officer is not a party. The very statement of the position of the city bears evidence of sound sense and sound law. It is not disputed by the city that mandamus might be a proper remedy by one claiming to be the de jure officer, if the office was not filled by, and in the possession of another. There are some cases to this effect. In such situation title to office is not involved. But counsel for relator say that there are seventeen Missouri cases ruling that mandamus is the proper remedy, and then proceed to cite that line of Kansas City cases (involving discharged Kansas City officers and employees under the Kansas City Civil Service charter and ordinance provisions), beginning with State ex rel. Hamilton v. Kansas City, 305 Mo. 50. Many of the seventeen are from the Kansas City Court of Appeals, and some five of them are not reported, as said in the brief. Be it said of these five cases, that the Court en Banc quashed the record (in each of said cases) of the Kansas City Court of Appeals. [State ex rel. Kansas City v. Trimble, 317 Mo. 1208 to 1216, 298 S. W. 833 to 836, both inclusive.] Just

as we began to pen this paragraph of this opinion, one of these five (State ex rel. Lindsay v. Kansas City) has found its way back to this court, both by an application for writ of prohibition, and an application for a writ of certiorari, each of which applications are now pending. The other four will no doubt follow. We are going to concede that most, if not all, of these cases do rule that mandamus is the proper remedy. They all follow the lead of the Hamilton case, supra. They are wrong in so ruling, and the treasury of Kansas City has seriously suffered. We should take another invoice of legal principles, and this we shall proceed to do in paragraphs to follow.

VII. That mandamus will not lie in a case wherein the discharged officer or employee attempts to reinstate himself or collect his salary by such an action, when the office is, at the time, filled by another claiming under color of title, is strongly indicated by some of the texts and cases cited, supra, upon the question of payment to a *de facto* officer being a good defense, when suit is brought for the same salary by the *de jure* officer. Thus in 43 Corpus Juris, page 688, under the heading, "Necessity of Reinstatement," it is said: "It is *generally* held that the title to an office cannot be tried in an action to recover the salary incident thereto, and that *reinstatement* by a competent legal tribunal is a condition precedent to the right of recovery." We shall not further discuss the cases of Gracey v. St. Louis, 213 Mo. 384, and State ex rel. v. Walbridge, 153 Mo. l. c. 203, quoted in Gracey's case at page 397. We have discussed them in another portion of this opinion, and RAGLAND, J., has discussed them in State ex rel. v. Coon, 316 Mo. l. c. 554, 296 S. W. l. c. 102. We shall discuss what we think to be clean-cut Missouri law on this particular question.

In St. Louis County Court v. Sparks, 10 Mo. l. c. 120, SCOTT, J., said:

"It has been long held that a *mandamus* may be issued to restore a person to an office to which he is entitled. [4 Bacon, 500.] But we are not prepared to say, that this was a proper case for the interference of the circuit court by mandamus. Various considerations incline us to this opinion. The office was already filled by one who was *de facto* an officer, at least; and it appears to be law that when an office is already filled by a person who is in by color of right, a mandamus is never issued to admit another person, the proper remedy being an information in the nature of a *quo warranto*. [People v. Corporation of New York, 3 Johns. Ch. 79; Angell & Ames on Corporations, 565; The King v. Mayor of Colchester, 2 Durn. & East.] It would not be just that Wise's right to the office should be determined on a proceeding to which he was no party. He was the

proper person to vindicate his own rights, and a *quo warranto* was the proper mode under the circumstances to try the validity of his appointment.''

This ruling is even approved by Fox, J., in State ex rel. v. Miles, 210 Mo. 1. c. 168 and 169. This learned judge tried to distinguish his case from the case written by Judge SCOTT. He says, 1. c. 169:

''*We fully agree with counsel for respondents that you cannot litigate and determine the title to an office by a writ of mandamus,* but it is manifest that in this proceeding *the title to the position to which relator seeks to be restored is in no way involved. The mere claim to an office* by one whose claim is not based at least upon *a reasonable color of right, or where a person is simply an intruder into the position,* by no means put the title to the office in issue, and such a state of facts falls far short of being sufficient to prevent the issuance of the writ of mandamus to restore a party who has the right to discharge the duties and functions of a position to which he is legally entitled.''

From the foregoing it is clear that Judge Fox was determining his case on the theory that the party claiming title was in law and in fact a mere usurper, without color of title. He expressly approves of Judge SCOTT's ruling as is seen from this quotation.

In State ex rel. Jackson v. State Auditor, 36 Mo. 1. c. 72, WAGNER, J., said:

''This case is the same as the one reported in 34 Missouri, between the same parties, except that the petitioner now claims the additional salary that has accrued since the institution of the proceeding thereon. The question involved is the same. *A mandamus will not be issued to admit a person to an office while another is in under color of right.* The election of Emerson as judge of the 15th Judicial Circuit is admitted; he was regularly commissioned, and held his office under said election as judge. The register in the office of the Secretary of State showed Emerson to be the judge; and the Auditor, in auditing and allowing the salary, is governed by the register. *A conflict of title to the office is then presented, and that cannot be determined by mandamus; it must be by a direct proceeding in the nature of a quo warranto.''*

The same case had been to the court shortly prior to Judge WAGNER's opinion (State ex rel. Johnson v. Auditor, 34 Mo. 375), and no case was ever briefed by more able counsel. BATES, J., wrote the opinion, with the concurrence of the full bench. Opinions in those days were written on principles. The whole opinion is as follows:

''Albert Jackson was formerly the judge of the 15th Judicial Circuit. Another person has been commissioned as judge of that circuit, who was elected at the general election of judges in November, 1863. Judge Jackson claims that he is still lawfully the judge; and

having presented to the Auditor of Public Accounts an account against the State for one quarter's salary, and the Auditor having refused to audit and allow the same, he applies to this court for mandamus to the Auditor, commanding him to audit and allow the account.

"The application for a mandamus is refused. It is sufficient for the Auditor that another person has been commissioned as judge of the same circuit. The Auditor has no power to inquire whether the commission was properly issued to such other person. That is a matter wholly without the scope of his duties. *The law has provided another means for determining the right to an office.*"

In the instant case the due appointment of Gallagher's successor is shown, and his occupancy of the position is shown. The cases are parallel.

So too in State ex rel. Bland v. Rodman, 43 Mo. 1. c. 260 (a mandamus case), the ruling of Scott, J., in 10 Mo. 120, supra, was approved, and then is added, as to the status of Judge Bland, as relator, as shown supra: "The officer derives his title to the office by virtue of his election, and the commission is prima-facie evidence only. The case has passed beyond any control of this court, *and the only redress the relator has, if he considers himself aggrieved, is by a legal contest made in pursuance of law.* It follows, therefore, that a peremptory writ must be denied. The other judges concur."

From the pen of that distinguished Missouri jurist, Judge Philips, when Presiding Judge of the Kansas City Court of Appeals, in State ex rel. v. Gasconade County Court, 25 Mo. App. 1. c. 450, comes this language:

"It is the well-settled law generally, and of this State especially, that, 'where an office is actually filled by an incumbent, exercising the functions of the office *de facto,* and under color of right, mandamus will not lie to compel the admission of another claimant, or to determine the disputed question of title.' The claimant, in such case, must have recourse to the remedy of quo warranto. [High Extr. Leg. Rem. (2 Ed.) sec. 49; St. Louis County Court v. Sparks, 10 Mo. 118; State ex rel. v. Rodman, 43 Mo. 256; State ex rel. v. Moseley, 34 Mo. 375.]"

From an equally distinguished Missouri jurist of the St. Louis Court of Appeals comes the same thought. In State ex rel. Tracy v. Taaffe, 25 Mo. App. 1. c. 569, Rombauer, J., said:

"If any additional reason were needed to show that the recognized legal construction carries out the actual intent of the law-givers in this instance, it is furnished by the other facts stated in the return which disclose an *existing legal controversy as to the title to this office.* The statute could not possibly have contemplated that the

city register, who is a mere clerk, should settle such controversies by mandamus. *Mandamus is not the proper remedy in any case to determine collaterally the title to office.* [State ex rel. v. Auditor, 34 Mo. 375; s. c., 36 Mo. 70; Winston v. Moseley, 35 Mo. 146.] Nor is it the proper remedy to determine such title in a direct proceeding. [The People v. Stephens, 5 Hill, 616, 629; Bonner v. The State, 7 Ga. 473; High on Mand., sec. 49, and cases cited.]"

The italics are ours. This Taaffe case is quoted with approval by GANTT, P. J., in State ex rel. v. May, 106 Mo. l. c. 508, 509, in this language:

"The question of practice, whether a mandamus proceeding was the proper remedy in this case, has been discussed thoroughly and well. It may be conceded that mandamus is not the proper remedy to determine, either directly or indirectly, the title of public office, particularly when an office is already filled by an actual incumbent exercising the functions of the office '*de facto*' and under color of right, and that 'quo warranto' and the statutory contests provided by law in many of the states is the proper remedy in such cases. [State ex rel. Tracy v. Taaffe, 25 Mo. App. 570; State ex rel. Jackson v. Auditor, 36 Mo. 72.] It is, however, also well settled that where the relator holds an *uncontested* title to a public office, or his title has been adjudicated and finally established by a competent tribunal, and he is in possession of the office, that mandamus will lie to compel the delivery to him of the books and papers belonging to his office by his predecessor in office, who has refused his demand therefor. [State ex rel. v. Trent, 58 Mo. 571.]"

In the foregoing we have suggested the only cases wherein mandamus can be used. Those instances are, (1) where the relator holds the uncontended title, or (2) where his title "has been adjudicated and finally established by a competent tribunal, and he is in possession of the office."

In other words, if there is in possession of the office a *de facto* officer claiming title to the office, under color of title (as we have in the instant case), then mandamus is not a proper remedy. We have but two ways of trying title to office in Missouri, i. e. (1) election contests as prescribed by statute, and (2) quo warranto. In each the *de facto* officer is a party. The foregoing Missouri cases state sound doctrine in our judgment, and the weight of authority elsewhere is to like effect. [Walden v. Town of Headland (Ala.), 47 So. 79; State ex rel. v. Hemstead (Conn.), 78 Atl. 442; People v. Trustees, 42 Ill. App. 60; City of Terre Haute v. Burns (Ind.), 116 N. E. 604; Leonard v. City of Terre Haute (Ind.), 93 N. E. 872; French v. Cowan, 79 Me. 426; Ashwell v. Bullock, 122 Mich. 620; Stabler v. Porter (Montana), 232 Pac. l. c. 189; State v. Atlantic City (N. J.), 8 L. R. A. 697; People ex rel. v. Sheehan, 113 N.

Y. Supp. 230; People ex rel. v. Police Commissioners, 174 N. Y. 450; People ex rel. v. Mayor of New York, 3 Johns. Cases, l. c. 79; Greenlee v. Cole (Ohio), 149 N. E. 711; Kile v. Graham (Okla.), 235 Pac. 524; Selby v. City of Portland (Ore.), 12 Pac. 377; State ex rel. Niggle v. Kirkwood (Wash.), 46 Pac. 331; Board of Education v. State ex rel. Reed, 100 Wis. 455; High's Extr. Leg. Rem. (2 Ed.), sec. 49, p. 55; Mechem's Public Offices and Officers, sec. 346, p. 228.]

These cases, and they constitute the overwhelming weight of authority elsewhere, fully accord with the Missouri cases we have cited, and fully accord with Mechem's Public Offices and Officers, Section 346, page 228, whereat it is said: "So where an office is already filled by an officer *de facto* who is discharging its duties, mandamus will not lie to compel the admission of one claiming to be the officer *de jure*, but resort must be had to quo warranto."

They likewise accord with High's Extraordinary Legal Remedies (2 Ed.) Section 49, page 55, whereat the author says:

"And the rule may now be regarded as established by an overwhelming current of authority, that where an office is already filled by an actual incumbent, exercising the functions of the office *de facto* and under color of right, mandamus will not lie to compel the admission of another claimant, or to determine the disputed question of title. In all such cases, the party aggrieved who seeks an adjudication upon his alleged title and right of possession to the office, will be left to assert his rights by the aid of an information in the nature of a quo warranto, which is the only efficacious and specific remedy to determine the questions in dispute."

Such a rule accords with sound reason. Such rule was firmly grounded in our early cases, supra. Such a rule gives the *de facto* officer a hearing, because in quo warranto he must be a party. Another rule would wholly disregard his rights. We must rule that mandamus is not the proper remedy in this case, and the judgment of the trial court, for this, as well as the other reasons assigned, supra, must be affirmed. It is so ordered. All concur; *Walker, C. J.*, in a separate opinion.

WALKER, C. J., (concurring).—I concur in this opinion not only for the reasons stated therein, but for the additional reasons set forth in the dissenting opinion filed in State ex rel. v. Coon, 316 Mo. 524, 545, 296 S. W. 90, 98, principal among which is the conclusion that the petition in the instant, as in the Coon case, states no cause of action. The petition in each of these cases shows on its face that the petitioner seeks to be reinstated to office and his right to compensation, since his ouster and to the present time, sustained. This contention, under the pleadings, gave him no right of action. For this reason primarily as well as those stated in the opinion at bar, I concur.