Charles Henry NICHOLS, Appellant,

v.

CITY OF KIRKSVILLE, Appellee.

No. 94–4101.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1995.

Decided Oct. 13, 1995.

Rehearing Denied Nov. 13, 1995.

C.E. Rendlen, III, Hannibal, Missouri, argued, for appellant.

Howard Hickman, Kirksville, Missouri, argued, for appellee.

Before WOLLMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Charles Henry Nichols, an employee of the city of Kirksville, Missouri, was injured on the job in mid–1990. At that time, he was a mechanic and the chief steward for his local union. Although he attempted to return to work several times, the city refused to allow him to do so. After Mr. Nichols had completed the year of medical leave that was permitted by city policy, the city fired him.

Mr. Nichols subsequently sued the city, alleging that he had been fired in violation of his first amendment rights of speech and association, in violation of state law prohibiting retaliation for filing a workers' compensation claim, and in violation of his fourteenth amendment rights to procedural due process. In late 1994, after two days of a jury trial, the trial court granted judgment as a matter of law to the city at the close of the plaintiff's evidence. Mr. Nichols appeals. We affirm the judgment of the trial court.[1]

I.

In the first count of his complaint, Mr. Nichols contended that his activities as a chief steward were the reason for his being fired. He asserted that claim under 42

---

1. The Honorable Jean C. Hamilton, Chief Judge, United States District Court for the Eastern District of Missouri.

U.S.C. § 1983, which forbids state governmental bodies to deprive a person of any "rights, privileges, or immunities secured" by the Constitution or federal law. The first amendment protects Mr. Nichols's activities as a union steward and a union member. *See, e.g., Thomas v. Collins,* 323 U.S. 516, 518, 532, 534, 536–38, 65 S.Ct. 315, 317, 323–24, 324, 325–26, 89 L.Ed. 430 (1945), and *Henderson v. Huecker,* 744 F.2d 640, 645–46 (8th Cir.1984); *see also Allee v. Medrano,* 416 U.S. 802, 814–15, 819 n. 13, 94 S.Ct. 2191, 2199–2200, 2202 n. 13, 40 L.Ed.2d 566 (1974).

■ At trial, the city maintained that Mr. Nichols was fired because the medical restrictions placed upon him precluded his performing practically all of the duties of his job. This action was consistent with the city's employment policies. Mr. Nichols asserted that the reason for his discharge was his aggressive representation of union members in grievance procedures and in negotiating a contract with the city. The only specifics he offered, however, were that he once walked out of a contract negotiations meeting for about five minutes. Although Mr. Nichols also testified that he had had "several run-ins with city officials" over employee grievances before he was injured, he gave no details of any of those incidents and acknowledged that neither those incidents nor the contract negotiations involved the city manager who actually fired him.

The only testimony that came even remotely close to calling into question the city's intent, in our view, was that of Mr. Nichols's previous lawyer, who stated that the city employee who handled workers' compensation claims had described Mr. Nichols as "a pain in the ass in regard to getting records for himself and other employees." According to that lawyer, however, that city employee did not specify the context to which that reference applied. There was no evidence that the city manager was influenced by, or even knew of, that comment.

Mr. Nichols offered no specific examples to support his claim that either his chief stewardship or his union membership by itself was a consideration in his discharge. We therefore affirm the trial court's judgment as a matter of law for the city on the first

amendment claim, because no reasonable juror could conclude on this evidence that Mr. Nichols had demonstrated a causal nexus between his union activities and his termination.

## II.

Mr. Nichols also contended that the city violated state law by firing him in retaliation for making a workers' compensation claim. *See* Mo.Ann.Stat. § 287.780. Because Mr. Nichols failed to prove that the doctrine of sovereign immunity was not applicable to his claim, *see, e.g., Oberkramer .v. City of Ellisville,* 650 S.W.2d 286, 297 (Mo.Ct.App.1983), we affirm the trial court's judgment as a matter of law for the city on that allegation.

■ Under Missouri law, municipalities are not immune from liability arising from their proprietary activities. *See, e.g., State ex rel. Board of Trustees v. Russell,* 843 S.W.2d 353, 358 (Mo.1992) (*en banc*). "A proprietary function entails those acts performed for the special benefit of the [municipality], ... in that it provides local necessities and conveniences to its own citizens," rather than acts "performed for the common good of all ... by the governmental unit as an agent of the state" (governmental functions). *Aiello v. St. Louis Community College District,* 830 S.W.2d 556, 558 (Mo.Ct.App.1992). Mr. Nichols argues that the job that he performed benefited the city and its citizens, rather than the state as a whole; that his job therefore served a proprietary rather than a governmental function; and, accordingly, that the city may not claim sovereign immunity for firing him from that job.

■ Even if we were to accept for the purposes of argument the first two of these contentions, we could not agree with the conclusion that Mr. Nichols draws from them. That is because the alleged wrongful act in this case is not something that Mr. Nichols did in his job but what the city did, *i.e.,* firing him. Hiring and firing city employees are governmental, not proprietary, activities. *See, e.g., State ex rel. Gallagher v. Kansas City,* 319 Mo. 705, 7 S.W.2d 357, 361 (1928) (*en banc*); *see also* 57 Am.Jur.2d *Municipal, County, School, and State Tort Lia-*

*bility* § 639 at 574 (1988). The city's act was therefore subject to the defense of sovereign immunity.

■ Mr. Nichols argues further that if the doctrine of sovereign immunity is applicable to this claim, the city has waived it. He asserts first that the statute authorizing civil liability for employers who fire an employee in retaliation for a workers' compensation claim, *see* Mo.Ann.Stat. § 287.780, acts as an express waiver of sovereign immunity with respect to all such lawsuits. That argument, however, is foreclosed by *Krasney v. Curators of University of Missouri,* 765 S.W.2d 646, 650 (Mo.Ct.App.1989), in which the court held that this statute does not constitute an express waiver of sovereign immunity. Mr. Nichols's argument that the city had waived its sovereign immunity by purchasing liability insurance for damages arising from the exercise of governmental activities, *see* Mo.Ann.Stat. § 71.185.1, § 537.610.1, must also fail, because there is no evidence in the record in that the city ever purchased any such insurance. We therefore reject Mr. Nichols's waiver arguments.

### III.

■ Finally, Mr. Nichols claimed that because the city never gave him a hearing before firing him, he was fired in violation of his fourteenth amendment rights. He brought that claim under 42 U.S.C. § 1983, which protects rights to procedural due process that derive from a plaintiff's state-created property interest in continued employment. *See, e.g., Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972). Mr. Nichols cites the collective bargaining agreement between the city and his local union as the source of the property interest that he asserts.

The collective bargaining agreement states that no employee will be dismissed "without just cause" and that the city will notify the employee "in writing ... of any discharge" (presumably so that the discharge may be challenged through the grievance procedure established in the agreement). The trial court held, nonetheless, that under Missouri law, Mr. Nichols was an at-will employee and could therefore be fired without notice or a hearing.

■ It is true that Missouri statutes give public employees in Mr. Nichols's job the right "to form and join labor organizations and to present proposals" to any public employer. *See* Mo.Ann.Stat. § 105.510. It is also true that Missouri statutes provide that public employers and their employees may "meet, confer and discuss such proposals," and that the results of such discussions may be "reduced to writing and ... presented to the appropriate ... governing body ... for adoption, modification or rejection." *See* Mo.Stat.Ann. § 105.520. The Missouri courts have held, however, that these statutes "merely provide a procedural vehicle for assertion by [public employees] of their constitutional rights to peaceably assemble and to petition for redress of grievances." *Curators of the University of Missouri v. Public Service Employees Local No. 45,* 520 S.W.2d 54, 58 (Mo.1975) (*en banc*).

■ The Missouri courts have explicitly declared, unfortunately for Mr. Nichols, that cities are "not authorized to enter into ... binding collective bargaining agreement[s]," that collective bargaining agreements are in fact not binding, and that "the terms [of such agreements] can be changed unilaterally by [a city] without approval by the employee labor organization." *Morrow v. City of Kansas City,* 788 S.W.2d 278, 280 (Mo.1990) (*en banc*). Since public employees in Mr. Nichols's job are therefore considered at-will employees regardless of any collective bargaining agreement, they may be fired " 'at any time, without cause or reason, or for any reason' " that is not "constitutionally impermissible." *Amaan v. City of Eureka,* 615 S.W.2d 414, 415 (Mo.1981) (*en banc*), *cert. denied,* 454 U.S. 1084, 102 S.Ct. 642, 70 L.Ed.2d 619 (1981), quoting *Christy v. Petrus,* 365 Mo. 1187, 295 S.W.2d 122, 124 (1956) (*en banc*). In short, Missouri law gives Mr. Nichols no property interest in his job.

Because Mr. Nichols had no property interest protected by state law, the trial court was correct in granting judgment as a matter

of law for the city on the fourteenth amendment claim. We therefore affirm that ruling.

## IV.

For the reasons stated, we affirm the judgment of the trial court.